455 S.E.2d 280

**Daniel L. ARCHER**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1867–93–3.**

Court of Appeals of Virginia,
Salem.

March 28, 1995.

James M. Dungan, Asst. Public Defender (William E. Bobbitt, Jr., Public Defender, on brief), for appellant.

G. Russell Stone, Jr., Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: MOON, C.J., and BARROW and KOONTZ, JJ.

KOONTZ, Judge.

Daniel L. Archer (Archer) appeals his conviction for possession of marijuana while a prisoner in a state correctional facility. Archer asserts that the trial court erred in denying his motion to suppress evidence seized during a search of his person on the ground that (1) the officers lacked probable cause to enter his cell and conduct the search, and (2) the search was conducted in an abusive and unreasonable manner in violation of his Fourth Amendment rights. Finding no error, we affirm.

Archer was a prisoner in the Augusta Correctional Center. Following a report from a tower guard that he had observed Archer engaging in suspicious activity in the prison yard, three officers and a supervising sergeant went to Archer's cell. The officers discovered that Archer had blocked the viewing slot of the cell door with paper in violation of prison regulations.

Upon entering the cell, the officers smelled marijuana. Archer was ordered to submit to a body search. One of the officers noted that Archer was cupping an object in his hand. When ordered to display the object, Archer moved his hand to his mouth and lunged toward the cell's toilet.

The officers restrained Archer and ordered him to empty his mouth. When he refused to do so, the officers struggled with Archer for several minutes in an attempt to force his jaw open. Ultimately, at the direction of a captain who had been called to the cell block, Archer was shackled and carried to the medical unit. The captain then asked the nurse on duty if he could force open Archer's jaw. The nurse produced a plastic "jaw screw" or "jaw spreader" and proceeded to force Arch-

er's jaw open by inserting the device and twisting it between his teeth. The captain used a pair of tweezers to remove from Archer's mouth a plastic bag containing marijuana.

Archer concedes that as a prisoner he is not afforded the same level of protection from warrantless searches which applies to the general public. *See Marrero v. Commonwealth,* 222 Va. 754, 756–57, 284 S.E.2d 809, 811 (1981). Nonetheless, he asserts that the officers were required to show probable cause before conducting a warrantless invasive search of his person. In *Marrero,* the Virginia Supreme Court approved of the use of random searches of prisoners' lockers by prison officials. *Id.* While no decision of the appellate courts of this Commonwealth has expressly approved body searches of an inmate absent probable cause, the present case does not present us with an opportunity to resolve that issue.

The record clearly shows that the prison officials had probable cause to believe that Archer was in possession of contraband. Archer was observed by a tower guard conducting suspicious transactions in the prison yard. Upon investigating this report, the officers discovered that Archer had violated prison policy by blocking the viewing port of his cell door, giving rise to a reasonable inference that he wished to conceal illicit activity. The officers testified that upon entering the cell they detected the odor of marijuana. At this point, all of the actions of the officers were permissible under *Marrero* without the need to show probable cause.

Upon these facts, we hold that the officers had probable cause to suspect that Archer was in possession of marijuana when they ordered him to submit to a body search and that the officers' actions thereafter were prompted by Archer's efforts to evade that search. Contrary to Archer's assertion, those efforts did not evince a heightened privacy interest in certain body parts—specifically the interior of his mouth— which required the officers to establish further probable cause to intensify or concentrate their efforts in that area.

We now address Archer's assertion that the officers' unsuccessful efforts to force open his jaw and the forced

opening of his jaw by the nurse constituted an unreasonably intrusive body search. *See Winston v. Lee,* 470 U.S. 753, 767, 105 S.Ct. 1611, 1620, 84 L.Ed.2d 662 (1985). Factors to be considered in deciding whether an intrusive body search is permissible are (1) the officer must have a clear indication that incriminating evidence will be found, (2) the officer must obtain a warrant or, in the alternative, exigent circumstances must exist, such as the imminent destruction of evidence, and (3) the officer must extract the evidence using a reasonable method and in a reasonable manner. *Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966).

We have already found that the officers had a clear indication that incriminating evidence would be found. It is also clear from the record that Archer was attempting to destroy the evidence. He at first attempted to flush the evidence down the toilet. When this effort failed, he attempted to swallow the bag.[1] Accordingly, we hold that the first two criteria of the *Schmerber* test were present.

In *Lee,* the Court elaborated on the third criterion listed in *Schmerber.* The Court described a balancing test to be used in evaluating the reasonableness of intrusive searches. On one side of the equation, a court must consider the "extent to which the procedure may threaten the safety or health of the individual" and the extent to which the procedure intrudes on "the individual's dignitary interests in personal privacy and bodily integrity." *Lee,* 470 U.S. at 761, 105 S.Ct. at 1617. On the other side of the equation, a court must consider the community's interests in "fairly and accurately determining guilt or innocence." *Id.* at 762, 105 S.Ct. at 1617.

The weight of authority from other jurisdictions supports a determination that police officers may use a considerable

---

1. The Commonwealth further asserts that Archer was choking on the bag, constituting a medical emergency which would serve as an exigent circumstance. While there was some evidence that Archer was in distress, the record does not support the contention that the officers' intent was to render medical aid or that the use of the jaw screw was medically necessary as Archer could have voluntarily opened his mouth.

amount of force in removing evidence from a suspect's mouth before it is swallowed. We can find no case where the specific medical device used in this case was used to force open the jaw of a suspect during a search.[2] However, many jurisdictions have approved the use of other medical methods to achieve this same end. *See, e.g., Jones v. United States,* 620 A.2d 249 (D.C.1993) (use of Heimlich maneuver to force contraband from defendant's mouth was not unreasonable); *see also State v. Harris,* 244 Neb. 289, 505 N.W.2d 724 (1993) (use of lateral vascular neck restraint to prevent swallowing of drugs was not unreasonable search). Similarly, there is wide acceptance of the use of non-medical, physical force to extract contraband from a suspect's mouth. *See, e.g., People v. Fulkman,* 235 Cal.App.3d 555, 286 Cal.Rptr. 728 (1991) (officers pounded defendant on back, placed pressure on Adam's apple to prevent him from swallowing, and pried contraband out of defendant's mouth with pen); *People v. Holloway,* 416 Mich. 288, 330 N.W.2d 405 (1982) (permitting applying pressure on defendant's jaw and placing fingers in defendant's mouth to recover tinfoil packets containing heroin and cocaine), *cert. denied,* 461 U.S. 917, 103 S.Ct. 1900, 77 L.Ed.2d 288 (1983); *Hernandez v. State,* 548 S.W.2d 904 (Tex.Crim.App.1977) (choking defendant until he spit out four balloons containing heroin); *State v. Lewis,* 115 Ariz. 530, 566 P.2d 678 (1977) (choke hold and slap on the back); *State v. Young,* 15 Wash. App. 581, 550 P.2d 689 (1976) (grabbing throat and pinching nose), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2635, 53 L.Ed.2d 246 (1977). *But see, Locke v. State,* 588 So.2d 1082 (Fla.Ct.App. 1991) (not proper for police officer forcibly to choke a person in order to prevent the swallowing of small amount of drugs); *State v. Tapp,* 353 So.2d 265 (La.1977) (evidence inadmissible

---

**2.** A "jaw screw" or "jaw spreader" is a medical device, resembling a large screw or corkscrew, used to free the patient's mandibular joints when they have seized due to trismus or a seizure. This is generally done to avoid closing of the air passages and a resulting anoxia. *See* L. Abelson, *New Jaw Spreader for Trismus,* 17 N.Y. State J.Med. 2344 (1967). The nurse testified that he had used a jaw spreader in the past for its usual purpose, but never to remove contraband from a prisoner's mouth.

where defendant was caused to disgorge the packet from his throat after a struggle lasting 15 to 20 minutes). In some cases, extreme methods resulting in injury to the suspect have been allowed. *See, e.g., State v. Desmond,* 593 So.2d 965 (La.Ct.App.) (holding that police used reasonable force even if they grabbed defendant by the throat to prevent him from swallowing, and "slammed him to the ground, possibly rendering him unconscious"), *writ denied,* 600 So.2d 637 (La.1992); *Foxall v. State,* 157 Ind.App. 19, 298 N.E.2d 470 (1973) (police did not use unreasonable force in inserting shoehorn into defendant's mouth to extract evidence after a scuffle ensued between defendant and officers; subsequent physical examination of defendant revealed three broken ribs, bruised lower lip, slight hemorrhaging of one eye, and several teeth missing from denture plate).

Without necessarily approving the full spectrum of methods allowed in other jurisdictions, we hold that use of a proper medical device in its intended manner to force open the jaw of a recalcitrant suspect upon probable cause to believe that contraband is being concealed within the mouth is not an unreasonable method of conducting an otherwise lawful search of the suspect's person. No credible evidence in the record supports Archer's assertion that he was beaten by the officers in his cell. Rather, the officers struggled with Archer and attempted to force his jaw open manually. When this attempt was unsuccessful, a senior supervisor was called to the scene. On the supervisor's direction, Archer was shackled and taken to the medical unit. The nurse used the proper medical instrument to force open Archer's jaw without causing any harm to him. Archer suffered temporary discomfort only because he resisted.

Under the rationale stated above, we hold that the trial judge did not err in permitting the evidence obtained through use of the jaw screw to be introduced at trial. Accordingly, we affirm Archer's conviction.

*Affirmed.*