COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Senior Judge Cole
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                          OPINION BY
v.        Record No. 2700-97-2     JUDGE LARRY G. ELDER
                                          MAY 6, 1998
DENISE PATRICE GILMORE


         FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                  William L. Wellons, Judge

         Richard B. Smith, Assistant Attorney General
         (Mark L. Earley, Attorney General, on
         briefs), for appellant.

         Tonja M. Roberts for appellee.


     The Commonwealth appeals a pretrial order granting the

motion of Denise Patrice Gilmore (defendant) to suppress evidence

obtained during a search incident to her arrest.  The

Commonwealth contends the trial court erred when it concluded

that the warrantless search of defendant's vaginal cavity was

unreasonable under the Fourth Amendment.  For the reasons that

follow, we affirm the order suppressing the evidence.

                              I.

                            FACTS

     On August 1, 1996, Investigators Richard Pulliam and Howard

Powell of the Halifax County Sheriff's Office were working with

Christopher New, an undercover informant, to arrange controlled

buys of crack cocaine from suspected dealers.  Sometime prior to

4:00 p.m., New contacted William Pleasants, who agreed to sell

crack cocaine to New at New's home.  Prior to Pleasants' arrival,

Investigator Pulliam searched New and gave him four hundred dollars in cash. The investigator had previously recorded the serial numbers of the cash.

A short while later, Pleasants drove his automobile into New's driveway, and New exited his house to meet him. Investigator Powell observed New approach the driver-side of the vehicle, return to the corner of the house, and again approach the driver-side of the vehicle. After New left the driver-side of the vehicle a second time, Pleasants backed his vehicle out of New's driveway and drove away.

New re-entered the house and gave Investigator Pulliam 1.405 grams of crack cocaine. Investigators Pulliam and Powell then left the house and pursued Pleasants' automobile with the "blue lights" of their vehicle flashing. As the investigators neared Pleasants' automobile, it accelerated and continued onto portions of several roads. As Pleasants traveled over a bridge and beneath an underpass, the investigators "saw a brown object come out of the passenger-side window" of Pleasants' automobile. Later, Pleasants turned into a parking lot at a restaurant and stopped his vehicle.

The investigators pulled in next to Pleasants' vehicle and approached on foot. They saw Pleasants in the driver-seat and defendant in the passenger-seat. The investigators immediately started searching for the cash they had given to New to purchase cocaine from Pleasants. The investigators searched the interior

of the vehicle, Pleasants' person, and eventually had Pleasants' vehicle "taken . . . apart."  A team from the sheriff's office, assisted by a dog, searched the area where the investigators had seen the brown object jettisoned from Pleasants' automobile.  No object was found.  Although the investigators found a small quantity of marijuana in the ashtray of Pleasants' vehicle, none of their searches produced the missing four hundred dollars.

Investigator Pulliam contacted Deputy Jackie Shields and asked her to proceed to the scene of the stop.  When Deputy Shields arrived, Investigator Pulliam informed her in detail about the unsuccessful efforts to locate the missing money and asked her to search defendant.  After some discussion about searching defendant in the restaurant, Deputy Shields transported defendant to the sheriff's department to conduct the search.  She took defendant to an "interrogation room" and told her to remove all of her clothing in preparation for a "strip search."  After a search of defendant's discarded clothing and hair failed to reveal any money, Deputy Shields asked defendant if she had the money "on her body."  Defendant, who at this point was naked, told the deputy that she "didn't have anything."  Deputy Shields replied that she was "going to have to be sure."

Defendant then informed Deputy Shields that she was currently menstruating and asked to go to the bathroom "to remove her . . . personal protection."  Deputy Shields refused defendant's request, and defendant "squatted down" in front of

Deputy Shields and "proceeded to remove her tampon." Deputy Shields then told defendant to "squat again" and cough three times. While defendant was squatting, Deputy Shields attempted to visually examine the exterior of defendant's vagina. She then told defendant to stand up against the wall. After putting a glove on her hand, Deputy Shields "stuck her hand inside" defendant's vagina and "removed the money from out of there."

Deputy Shields testified that she was not a "medically-trained person." She was alone with defendant during the entirety of the search. No search warrant was obtained prior to the search of defendant's vaginal cavity.

The serial numbers on the money retrieved from defendant's vagina matched the numbers on the money the investigators had given to New to purchase crack cocaine from Pleasants. A short while later, defendant waived her Miranda rights and made an incriminating statement to Investigator Pulliam.

A grand jury indicted defendant for distributing cocaine in violation of Code § 18.2-248 and possessing marijuana in violation of Code § 18.2-250.1. Prior to trial, defendant moved to suppress the money obtained during the search of her vaginal cavity and her subsequent statement to Investigator Pulliam on the ground that this evidence was obtained in violation of the Fourth Amendment. Following a hearing, the trial court granted defendant's motion to suppress the money and her statement.

The trial court noted that defendant "ha[d] not raised any

question about the validity of the arrest or . . . being held in the custody of the sheriff's office."  It stated that "the question . . . is whether or not this was a reasonable search incident to an arrest."  The trial court then concluded that Deputy Shields' search of "[d]efendant's body cavity" was "an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments."  It also concluded that to conduct a search of defendant's body cavity "without medically-trained personnel present" was constitutionally "unreasonable."

## II.

## WARRANTLESS SEARCH OF DEFENDANT'S VAGINAL CAVITY

The Commonwealth contends the trial court erred when it concluded that the search of defendant's vaginal cavity was unreasonable under the Fourth Amendment.  The Commonwealth argues that the search of defendant's vaginal cavity was within the scope of Deputy Shields' authority to search defendant incident to her arrest and that the officers involved had reason to believe that the missing four hundred dollars was in defendant's vagina.  In the alternative, the Commonwealth argues that the search of defendant's vaginal cavity was lawful under the Fourth Amendment because the officers involved had a clear indication that the cash would be found there and they were faced with exigent circumstances.[1]  We disagree.

---

[1]The Commonwealth also argues that the trial court erroneously granted defendant's motion to suppress on the ground that the search of her vagina violated Code § 19.2-59.1(C).  The relevant portion of Code § 19.2-59.1(C) states that, when a

A.

This case raises the issue whether the scope of a police officer's authority under the Fourth Amendment to conduct a "full" warrantless search of an arrestee's person incident to a lawful arrest includes the authority to search the arrestee's body cavities. We hold that it does not.

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV (emphasis added). Subject to a few specifically established exceptions, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." Katz v. United States, 389 U.S. 347, 357 (1967) (citations omitted). One of the established exceptions to the Fourth Amendment's warrant requirement is for a "search incident to a lawful arrest." United States v. Robinson, 414 U.S. 218, 224, 226 (1973) (also holding that searches incident to arrest "meet

_____

suspect is subject to custodial arrest, "a search of any body cavity, other than the mouth, shall be conducted either by or under the supervision of medically trained personnel." The Commonwealth argues that the trial court erred because the suppression of evidence is not available as a remedy when evidence is obtained in violation of this statute.

However, both the trial court's order and ruling from the bench indicate that its decision to grant defendant's motion to suppress was based solely on constitutional grounds. Because the trial court did not base its decision on statutory grounds, we need not address the Commonwealth's argument that suppression is not an available remedy when evidence is obtained in violation of Code § 19.2-59.1(C).

6

the Fourth Amendment's requirement of reasonableness"); see also

Chimel v. California, 395 U.S. 752, 762-63 (1969).

When delineating the permissible scope of a warrantless

search incident to arrest, the United States Supreme Court has

stated that a lawful arrest of a suspect authorizes the police to

conduct "a full search of the [arrestee's] person." Robinson,

414 U.S. at 235. In addition, the police may search the area

within the arrestee's immediate control, see Chimel, 359 U.S. at

763, and seize his or her personal effects that are evidence of

the crime. See United States v. Edwards, 415 U.S. 800, 804-05

(1974).[2] Furthermore, a police officer's decision to conduct a

search incident to arrest is largely free from both prior or

subsequent judicial scrutiny. The Supreme Court stated in

Robinson:

> A police officer's determination as to how
> and where to search the person of a suspect
> whom he has arrested is necessarily a quick
> ad hoc judgment which the Fourth Amendment
> does not require to be broken down in each
> instance into an analysis of each step in the
> search. The authority to search the person
> incident to a lawful custodial arrest, while
> based upon the need to disarm and to discover
> evidence, does not depend on what a court may
> later decide was the probability in a
> particular arrest situation that weapons or

---

[2]See also Illinois v. Lafayette, 462 U.S. 640, 648 (1983) (holding that the police may search any container or article in an arrestee's possession "as part of the routine procedure incident to incarcerating an arrested person"); New York v. Belton, 453 U.S. 454, 460 (1981) (holding that, following the lawful search of an occupant of an automobile, the police may conduct a contemporaneous search of the automobile's passenger compartment and the contents of any containers found in the passenger compartment).

7

>   evidence would in fact be found upon the
>   person of the suspect.

Robinson, 414 U.S. at 235.

However, the authority of the police under the Fourth Amendment to conduct a "full search" of an arrestee's person without a warrant is only skin deep. The Supreme Court has stated that the scope of warrantless searches incident to arrest is not free from all constitutional restraint. See Edwards, 415 U.S. at 808 n.9. It has also held that the considerations that justify the authority to search incident to a lawful arrest -- the need to disarm the suspect and to prevent the destruction of evidence under the suspect's direct control -- "have little applicability with respect to searches involving intrusions beyond the body's surface." Schmerber v. California, 384 U.S. 757, 769 (1966).

>   The interests in human dignity and privacy
>   which the Fourth Amendment protects forbid
>   any such intrusions on the mere chance that
>   desired evidence might be obtained. In the
>   absence of a clear indication that in fact
>   such evidence will be found, these
>   fundamental human interests require law
>   officers to suffer the risk that such
>   evidence may disappear unless there is an
>   immediate search.

Id. at 769-70. A search of a body cavity is considered an "intrusion" into the body under Schmerber that falls outside the permissible scope of a search incident to arrest.[3]

---

[3]See United States v. Oyekan, 786 F.2d 832, 839 n.13 (8th Cir. 1986) (stating that "a body cavity search must be conducted consistently with the Schmerber factors"); Giles v. Ackerman, 746 F.2d 614, 616 (9th Cir. 1984) (stating that Schmerber "implies

The warrant requirement re-enters the picture when the police seek to search for evidence <u>inside</u> a suspect's body incident to arrest.  "[T]he police must obtain a warrant when they intend to seize an object outside the scope of a valid search incident to arrest . . . ."  <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 484 (1971).

> Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.  The requirement that a warrant be obtained is a requirement that inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."  The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.

---

that intrusions into the arrestee's body, including body cavity searches . . . are not authorized by arrest alone"); <u>see also</u> <u>Swain v. Spinney</u>, 117 F.3d 1, 6 (1st Cir. 1997) (stating that "<u>Robinson</u> did not hold that all possible searches of an arrestee's body are automatically permissible as a search incident to arrest"); <u>Fuller v. M.G. Jewelry</u>, 950 F.2d 1437, 1446 (9th Cir. 1991) (stating that "<u>Robinson</u> simply did not authorize" arresting officers to conduct a strip and visual body cavity search); <u>Mary Beth G. v. City of Chicago</u>, 723 F.2d 1263, 1271 (7th Cir. 1983) (stating that "the <u>Robinson</u> court simply did not contemplate the significantly greater intrusions that occur[]" in a visual search of an arrestee's anal and vaginal cavities).
     Several state courts have similarly concluded that the broad authority of the police to search an arrestee's person incident to arrest is limited by the principles applicable to bodily intrusions set forth in <u>Schmerber</u>.  See <u>State v. Clark</u>, 654 P.2d 355, 361-62 (Haw. 1982); <u>State v. Fontenot</u>, 383 So.2d 365, 367 (La. 1980); <u>cf.</u> <u>State v. Milligan</u>, 748 P.2d 130, 135 (Or. 1988); <u>People v. Williams</u>, 510 N.E.2d 445, 447 (Ill. App. Ct. 1987); <u>State v. Baker</u>, 502 A.2d 489, 492 (Me. 1985).

<u>Schmerber</u>, 384 U.S. at 770 (citations omitted).

Based on these principles, we hold that a warrantless search involving a bodily intrusion, even though conducted incident to a lawful arrest, violates the Fourth Amendment unless (1) the police have a "clear indication" that evidence is located within a suspect's body and (2) the police face exigent circumstances.[4] See <u>id.</u> at 770-71; <u>accord</u> <u>Archer v. Commonwealth</u>, 20 Va. App. 87, 91, 455 S.E.2d 280, 282 (1995) (citing <u>Schmerber</u>, 384 U.S. at 770). In addition, because the Fourth Amendment "constrain[s] . . . against intrusions . . . which are made in an improper manner," the means and procedures employed by the authorities to conduct a search involving an intrusion into the body must also satisfy "relevant Fourth Amendment standards of reasonableness." <u>Schmerber</u>, 384 U.S. at 768; <u>see also</u> <u>Winston v. Lee</u>, 470 U.S. 753, 759-61 (1985); <u>Edwards</u>, 415 U.S. at 808 n.9; <u>Archer</u>, 20 Va. App. at 91, 455 S.E.2d at 282.[5]

---

[4]"Exigent circumstances" in these situations include an officer's reasonable belief under the circumstances presented that the delay necessary to obtain a warrant will result in the destruction of evidence. <u>Schmerber</u>, 384 U.S. at 770.

[5]We disagree with the Commonwealth that this case should be analyzed according to the framework applied by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520, 558-60 (1979). In <u>Wolfish</u>, the Supreme Court held that the Fourth Amendment was not violated by the policy of a correctional facility requiring visual body cavity searches of pretrial detainees following every contact visit with a person from outside the institution. <u>See</u> <u>id.</u> at 558. The Supreme Court concluded that the visual cavity searches after contact visits met the "test of reasonableness" under the Fourth Amendment after balancing "the significant and legitimate security interests of the [correctional facility] against the privacy interests of the inmates." <u>Id.</u> at 599-60.
The analytical framework set forth in <u>Wolfish</u> is

B.

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995).  On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  We review the trial court's findings of historical fact only for "clear error," but we review de novo the trial court's application of defined legal standards to the particular facts of a case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas v. United States, 517 U.S. 690, 699 (1996).

---

inapplicable to this case because the searches in Wolfish were initiated under markedly different circumstances.  Wolfish addressed the Fourth Amendment rights of pretrial detainees, "persons who have been charged with a crime but who have not yet been tried on the charge."  Id. at 523.  The Supreme Court's analysis in Wolfish was based in part on the premise that "[a] detainee simply does not possess the full range of [constitutional] freedom of an unincarcerated individual."  Id. at 546.  Because a person who is searched incident to arrest is not yet incarcerated, he or she has greater constitutional protection than a pretrial detainee.  As such, this case is controlled by the principles set forth in Schmerber rather than Wolfish:  in order to conduct a lawful body cavity search of an arrestee, the police must (1) have a "clear indication" that evidence will be found and (2) either obtain a search warrant or face exigent circumstances.

11

Turning to the facts of this case, we hold that the warrantless search of defendant's vaginal cavity violated the Fourth Amendment. The circumstances apparent to the officers at the time of the search did not "clearly indicate" that the missing cash would be found inside defendant's vagina. Moreover, even assuming the existence of a clear indication, the officers involved were not faced with exigent circumstances that justified their decision to proceed with the search in the absence of a warrant.

At the hearing on her motion to dismiss, the evidence viewed in the light most favorable to defendant indicated that Deputy Shields "stuck her hand inside" of defendant's vagina causing defendant to experience discomfort. The deputy felt and removed the cash. Because the deputy's search for the missing money involved an intrusion into defendant's vaginal cavity, it exceeded the scope of the deputy's authority to search defendant's person incident to arrest. Furthermore, the record indicates that the officers involved did not obtain a warrant prior to the search in accordance with Schmerber. Thus, at the hearing on defendant's motion, the Commonwealth had the burden of proving that the decision to subject defendant to a vaginal cavity search was justified by a "clear indication" and exigent circumstances. See Schmerber, 384 U.S. at 770; Archer, 20 Va. App. at 91, 455 S.E.2d at 282.

The record in this case does not establish that the officers

12

had a "clear indication" the cash they had given to New to purchase cocaine from Pleasants would be found inside defendant's vagina. The officers testified that, while they were pursuing the vehicle driven by Pleasants, they saw "a brown object come out of the passenger-side window." A dog-assisted search of the area failed to locate the object, and the investigators could not confirm that the "brown object" did not contain the missing money. In addition, the investigators had little information suggesting that defendant participated in the transaction between New and Pleasants.[6] Obviously, Pleasants could have discarded the "brown object" by throwing it through the passenger-side window to the side of the roadway. The officers were not aware that defendant was in the vehicle with Pleasants during the transaction at New's residence, and they did not learn of her presence in Pleasants' vehicle until after it was stopped. Based upon the circumstances apparent to the investigators in this case, we cannot say they had a "clear indication" that the missing money would be found in defendant's vaginal cavity. Although the facts known to the investigators may have supported a hunch that defendant was concealing the missing cash inside her vagina, the Fourth Amendment requires the police to have a more apparent basis before subjecting an arrestee to the degrading and humiliating experience of a body cavity search. Cf. Schmerber,

---

[6]In her motion to suppress, defendant did not challenge the legality of her arrest. As such, we do not address this issue on appeal.

13

384 U.S. at 769-70 (stating that the Fourth Amendment forbids intrusions into the body "on the mere chance that desired evidence might be obtained").

We also conclude that the failure of the investigators to obtain a search warrant prior to the search of defendant's vaginal cavity was not justified by exigent circumstances. The evidence sought by the officers was four hundred dollars in United States currency. No evidence in the record indicates that the evidentiary quality of the cash, such as the legibility of the serial numbers printed on the bills, was likely to be impaired by prolonged exposure to the environment of defendant's vaginal cavity. See State v. Clark, 654 P.2d 355, 360 (Haw. 1982) (stating that there was no risk that currency would dissipate by "absorption or dissolution" while located inside arrestee's vagina); cf. State v. Fontenot, 383 So.2d 365, 367 (La. 1980) (stating that there was no danger that capsules enclosed in a pill bottle would be "absorbed or destroyed" while located inside arrestee's vagina). Moreover, during the delay necessary to obtain a search warrant, defendant could have been observed and prevented from destroying the cash. See Clark, 654 P.2d at 360; Fontenot, 383 So.2d at 367. As such, we cannot say that the officers involved had a reasonable belief that the delay necessary to obtain a search warrant would have resulted in the destruction of the evidence sought.

Because we conclude that the police violated the Fourth

14

Amendment when they subjected defendant to a warrantless search of her vaginal cavity, we need not address whether the manner in which this search was performed -- by a non-medically-trained person in an interrogation room -- was unreasonable under the Fourth Amendment.  See Schmerber, 384 U.S. at 771-72.  Although the trial court found the search unreasonable because it was conducted outside the presence of a medically-trained person, in light of our analysis of this case, "the right result reached by the trial court . . . will nevertheless be approved."  Thims v. Commonwealth, 218 Va. 85, 93, 235 S.E.2d 443, 447 (1977).[7]

For the foregoing reasons, we affirm the trial court's order granting defendant's motion to suppress.

Affirmed.

---

[7]Authorities who conduct body cavity searches are required to comply with procedures established by the General Assembly in Code § 19.2-59.1(C).  Code § 19.2-59.1(C) states in full:

> A search of any body cavity must be performed under sanitary conditions and a search of any body cavity, other than the mouth, shall be conducted either by or under the supervision of medically trained personnel.

15

Cole, J., concurring.

I concur in the majority's decision to affirm the trial court's ruling to suppress the evidence. However, I disagree with the majority's conclusion that the deputy sheriff did not have a "clear indication" that the evidence was located within Gilmore's body cavity.

The Supreme Court has consistently held that searches are to be judged on a case-by-case basis and that all searches must be conducted in a reasonable manner. Here, the facts proved that a drug transaction occurred and that marked money had been given to the driver of the car in which the appellee, Gilmore, was a passenger. The police maintained surveillance of the car until it was stopped. A thorough search of the car failed to reveal the money. A non-intrusive search of Gilmore and the driver also failed to produce the money. Eliminating all reasonable explanations as to the whereabouts of the money, the police were faced with only one other possibility: that Gilmore had hidden the money on her person. After the police officer first performed a strip search, the only remaining possibility was that the money was hidden in appellant's body cavity. Therefore, contrary to the majority's view, I find from the evidence a "clear indication" that Gilmore had secreted the money on her person.

I do not believe, however, that the officers were faced with sufficient exigent circumstances to justify their decision to

16

proceed with the internal body search in the absence of a search warrant.  A medically-trained person did not perform the search.  The evidence does not disclose that the procedure was performed in a manner reasonably ensuring the safety and health of the suspect.  For this reason, I concur in the affirmance.