COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Frank and Senior Judge Baker
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                          MEMORANDUM OPINION* BY
v.    Record No. 0328-99-4              JUDGE JOSEPH E. BAKER
                                             JUNE 29, 1999
TOMIKA DAVELIA WHITE


            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                   James H. Chamblin, Judge

        Marla Graff Decker, Assistant Attorney
        General (Mark L. Earley, Attorney General,
        Attorney General, on brief), for appellant.

        Lorie E. O'Donnell, Public Defender (Office
        of the Public Defender, on brief), for
        appellee.


     In this appeal by the Commonwealth of Virginia (Commonwealth)

from an order of the Circuit Court of Loudoun County (trial court)

that sustained the motion of Tomika Davelia White (White) to

suppress evidence of illegal drugs discovered during a search by a

drug enforcement agent of White's suitcases, the pivotal issue

presented is whether the search exceeded the consent given to the

agent by White. The trial court held that White consented to a

search of the suitcases, but ruled that the actual search

conducted was "beyond the scope" of the consent given by White and

ordered that the discovered evidence be suppressed. Pursuant to

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

the provisions of Code § 19.2-398, the Commonwealth appeals that decision.[1]

The record discloses that Drug Enforcement Special Agent James Wekes (Wekes) received information that a black female in her twenties, with red hair, going by the name of "Brooke Simms," who walked with a cane, would be arriving at Dulles International Airport on American Airlines Flight 76 from Los Angeles. "Simms" was reported to be traveling with two new, locked suitcases, and she had paid for her tickets at the last minute with $1,141 in cash--all factors consistent with drug courier activity.

After Flight 76 arrived, Wekes saw White, who is a black female, and confirmed that she had debarked from that flight. White was carrying a crutch and pushing a wheelchair. White retrieved her luggage--two locked suitcases--and was being pushed in the wheelchair by a "sky cap," when Wekes approached her. Walking alongside White, Wekes identified himself as a DEA agent and asked whether White would mind speaking to him. He told her that she did not have to talk to him, and White twice stated that she did not mind speaking to Wekes. White allowed Wekes to see her flight tickets, and she also produced identification at his

---

[1] In her brief, White claimed that her encounter with the drug enforcement agent was not consensual, and that she was unlawfully seized. White did not, however, file a notice of cross-appeal. See Code § 19.2-401. At oral argument, White conceded this failure and abandoned her claim of unlawful seizure.

-

request.  Wekes testified that he was alone when he approached White, that he was not in uniform, that he did not display a weapon, that he never physically restrained White, and that he never raised his voice with her.  There were two sky caps present as Wekes spoke to White, and the encounter occurred in a public area in the airport.

Wekes told White that he was checking flights to see if anyone was carrying weapons, explosives, drugs, or large sums of undeclared money.  White denied that she possessed any contraband. She told Wekes that the two suitcases were hers and that she had keys to the cases.  White consented to Wekes' request to search the suitcases, and she provided him with her keys.

None of the keys White gave to Wekes opened the locks on the suitcases.  Wekes asked White whether she had any other keys, at which point she told him that she did not.  Wekes then opened the suitcases by using a pen to "pop" the zippers on the cases.  Wekes did not damage the suitcases, and White neither protested nor complained when or after Wekes opened the suitcases in this manner.

White admitted that Wekes did not physically seize her and that she voluntarily answered his questions.  She admitted that she gave Wekes permission to search her luggage and that she initially told him she had keys for the locks.  When she gave him the keys, she believed one would open the suitcases, and she and

-

Wekes did not discuss how or whether he could open the cases if none of the keys worked.  White conceded that she did not protest or withdraw the consent given when Wekes "popped" the zippers to open the suitcases.  At the suppression hearing, White asserted, however, that her consent did not extend to breaking into the luggage.

"On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom."  Commonwealth v. Gilmore, 27 Va. App. 320, 331, 498 S.E.2d 464, 470 (1998).  While we apply a "clear error" standard to the trial court's factual findings, see Ornelas v. United States, 517 U.S. 690, 699 (1996), whether a search or seizure is reasonable under the Fourth Amendment is an issue of law that we review de novo, see Taylor v. Commonwealth, 28 Va. App. 638, 641-42, 507 S.E.2d 661, 663 (1998).

"A consensual search is reasonable if the search is within the scope of the consent given."  Grinton v. Commonwealth, 14 Va. App. 846, 850-51, 419 S.E.2d 860, 862 (1992).  "The United States Supreme Court has articulated the standard for measuring the scope of an individual's consent under the Fourth Amendment to be '"objective" reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?'"  Bolda v. Commonwealth, 15 Va. App. 315, 317, 423 S.E.2d 204, 206 (1992) (quoting Florida v. Jimeno, 500 U.S. 248,

-

251 (1991)).  "The scope of a search is generally defined by its expressed object."  Jimeno, 500 U.S. at 251.

"'A suspect may of course delimit as he chooses the scope of the search to which he consents.  But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization.'"  Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996).  See Cardenas v. State, 857 S.W.2d 707, 712-13 (Tex. App. 1993) (holding that police acted within the scope of the defendant's consent to search his car where the officers forcibly removed a plate welded over the covering to the car's tire well, but where the car was not structurally damaged by the removal); United States v. Milian-Rodriguez, 759 F.2d 1558, 1563-64 (11th Cir. 1985) (holding that police did not exceed the scope of consent to search defendant's office when they picked the lock on the office closet door in order to search the closet), cert. denied, 474 U.S. 845 (1985); United States v. Martinez, 949 F.2d 1117, 1120-21 (11th Cir. 1997) (holding that police did not exceed the scope of the defendant's consent to search a mini-warehouse unit when the officers forced open the trunk of an automobile parked inside the unit).

"The scope of a search may be further defined during the course of the search by the passive acquiescence of the person whose property is being searched."  Grinton, 14 Va. App. at 851,

-

419 S.E.2d at 863. In Grinton, the defendants consented to a search of the "'contents and containers'" in their vehicle where the police officer indicated that he was looking for evidence of weapons or drug smuggling. See id. at 848, 419 S.E.2d at 861. The officer asked one of the defendants to open the car's trunk, but the defendant stated that he did not have a key to the trunk. The defendants also represented that there was nothing in the trunk. The police officer retrieved some tools from his patrol car and accessed the car's trunk by removing the back seat. See id. In holding that the search was reasonable, we noted that "[t]he defendants got out of the vehicle upon request and did not ask that the search be terminated at any time. Although they claimed not to have had a key to the trunk and asserted that they had nothing in the trunk, they did not withdraw consent to search the trunk." Id. at 851, 419 S.E.2d at 863.

White consented to Wekes' request for permission to open and search the suitcases. She gave Wekes keys that she believed would control the locks, and she placed no limitation on the search. The expressed object of the search was to investigate the contents of the suitcases to see if White was transporting contraband. White never objected when Wekes opened the two suitcases by "popping" the zippers. White's failure to object was sufficient to confirm a reasonable person's belief that Wekes was not exceeding the scope of White's consent by opening the cases in this manner. See Lawrence v. Commonwealth, 17 Va. App. 140, 146,

-

435 S.E.2d 591, 594 (1993), aff'd, 247 Va. 339, 443 S.E.2d 160 (1994).

White does not claim that there was physical damage done to the luggage by Wekes' method of making a keyless entry therein, and nothing in the record shows that the cases were damaged. Cf. United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990) (holding that general consent to search defendant's car did not extend to slashing open the spare tire). White does not allege that Wekes or any other officer physically coerced her, offered her any promise or inducement, or otherwise used any means of persuasion to obtain her consent or to prevent her from objecting if she wished to withdraw or limit her consent. Moreover, once it was clear that White did not have a key to the luggage locks, White had ample time to withdraw her consent or object to any further entry into the suitcases, yet failed to do either.

Applying the objective reasonableness rule to this evidence, we find that the trial court erred when it found that Wekes' action was not within the scope of the consent given. Accordingly, the suppression order of the trial court is reversed and this case is remanded to that court for such further action as the Commonwealth may be advised.

Reversed and remanded.