COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


ITEMUS WILSON

MEMORANDUM OPINION[*] BY
v.    Record No. 2850-00-2     JUDGE SAM W. COLEMAN III
MAY 28, 2002

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
John R. Alderman, Judge

Craig S. Cooley for appellant.

Robert H. Anderson, III, Senior Assistant
Attorney General (Randolph A. Beales,
Attorney General, on brief), for appellee.


Itemus Wilson appeals his jury trial convictions for

burglary, petit larceny, and tampering. He argues that the trial

court erred by 1) denying his motion to suppress evidence, 2)

instructing the jury on the permissible inferences to be drawn

from the possession of recently stolen goods, and 3) denying his

motion to strike the evidence for insufficiency. For the reasons

that follow, we disagree and affirm his convictions.

BACKGROUND

Police officers received notice that a silent alarm had

been triggered at a rural lodge at 5:29 a.m. on January 1, 2000.

The police officers contacted Johnny Strickland, a lodge

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

employee, and responded to the scene.  Strickland met the officers at the lodge and noted that several pieces of equipment had been damaged.  The coin boxes on several pinball and arcade machines had been pried open and the money removed.  Strickland testified that when he closed the lodge following the previous evening's party he inspected the building, locked its doors, and activated the motion detecting security system.  He stated that when he left the lodge at approximately 3:15 a.m., there was no damage to any of the doors, the juke box, pinball machines, or pool tables.  The pinball machines and pool tables accepted only quarters; the juke box accepted quarters and bills.  The machines had been serviced one week earlier and contained quarters at the time.  Stickland testified he had also observed patrons inserting coins into the machines during the New Year's Eve party.

When Strickland returned to the lodge to meet the officers, he noted the outside door had been broken open.  Inside the lodge he saw that the money receptacles had been pried off the juke box and pool tables.  On the floor he saw the broken locks and several quarters near the pool tables.  During the ensuing investigation, Investigator Drew Darby located one of the missing coin boxes near a path along the road close to the lodge.

At 6:50 a.m. approximately three-tenths of a mile from the lodge, Sergeant Michael Anthony saw two males walking alongside

-

the road.  Anthony approached the men and immediately noticed an odor of alcohol emanating from Itemus Wilson, one of the two men.  Anthony testified Wilson's eyes were bloodshot and dilated, that his speech was slurred, and that he swayed from side to side.  Anthony informed the men he was investigating a break-in of the lodge.  He stated the suspects might be on foot and they likely would be carrying a large number of quarters.  Anthony asked Wilson if he would consent to being searched, which Wilson refused.  Wilson admitted to the officer that he had been drinking.  Wilson said he had been playing poker all night at nearby apartments.  Anthony testified Wilson appeared nervous, that he attempted to back away from the officer, that his pockets had large bulges, and that Wilson repeatedly put his hands in his pockets.  Anthony stated he was concerned Wilson was carrying a weapon.  He patted Wilson down, felt a hard object in his pocket and felt what appeared to be a large number of quarters.  Anthony then arrested Wilson for being drunk in public and searched him incident to the public drunkenness arrest.  Anthony recovered $174.75 (699) in quarters from Wilson's pants pocket.  Among the quarters he also had a metal cam or circular metal disc similar to a piece missing from one of the lodge's machines.  Wilson also carried a flashlight.

ANALYSIS

I.

Wilson challenges his arrest and the resulting search of his person incidental to the arrest.  He argues the arrest for public drunkenness was merely a pretext to allow Anthony to conduct a search of his person.

"The police may use the opportunity presented by a legal arrest to learn more about crimes for which they have no probable cause to arrest."  James v. Commonwealth, 8 Va. App. 98, 102, 379 S.E.2d 378, 380 (1989).  Therefore, provided Anthony had probable cause to arrest Wilson for public drunkenness, we do not explore the officer's subjective motive for arresting Wilson.  See Horne v. Commonwealth, 230 Va. 512, 517, 339 S.E.2d 186, 189-90 (1986).

The constitutional validity of a warrantless arrest depends on whether, at the time of the arrest, the officers had probable cause to believe that the defendant had engaged or was engaging in criminal activity.  See McGuire v. Commonwealth, 31 Va. App. 584, 592, 525 S.E.2d 43, 47 (2000).  "'Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.'"  Jefferson v. Commonwealth, 27 Va. App. 1, 12, 497 S.E.2d 474, 479 (1998)

-

(citation omitted). "If any person . . . is intoxicated in public, whether such intoxication results from alcohol, narcotic drug or other intoxicant or drug of whatever nature, he shall be deemed guilty of a Class 4 misdemeanor." Code § 18.2-388.[1] "'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." Code § 4.1-100.

Anthony testified that Wilson slurred his speech and swayed from side to side. Wilson also smelled of alcohol, and his eyes were bloodshot and glassy. Darby testified that he saw Wilson shortly after his arrest and also noticed that he slurred his speech, stumbled, and smelled of alcohol. "The evidence was sufficient to support a finding that the defendant had drunk enough alcoholic beverage to so affect his manner, disposition, speech, muscular movement, general appearance or behavior as to be apparent to observation." Farren v. Commonwealth, 30 Va. App. 234, 240, 516 S.E.2d 253, 256 (1999), see also Leake v. Commonwealth, 27 Va. App. 101, 110-11, 497 S.E.2d 522, 526-27 (1998) (holding that factors such as odor of alcohol, slurred speech, unsteadiness in walking, and poor balance demonstrated intoxication within the definition of Code § 4.1-100). Thus,

_____

[1] Although public drunkenness is a Class 4 misdemeanor, pursuant to Code § 19.2-74(A)(2), the police are authorized to arrest an accused and not merely issue a summons.

-

the evidence was sufficient to support a finding that Anthony possessed probable cause to believe that Wilson was drunk in public.

"One of the established exceptions to the Fourth Amendment's warrant requirement is for a 'search incident to a lawful arrest.'" Commonwealth v. Gilmore, 27 Va. App. 320, 327, 498 S.E.2d 464, 468 (1998) (quoting United States v. Robinson, 414 U.S. 218, 224 (1973)). Anthony lawfully arrested Wilson for public drunkenness and properly searched him incident to that arrest. The trial court did not err in denying Wilson's motion to suppress.

## II.

Next, Wilson argues the trial court erred by instructing the jury that "[p]roof of the exclusive personal possession . . . of recently-stolen goods is a circumstance from which you may reasonably infer that the defendant was the thief." He contends the evidence did not support the trial court's conclusion that the items he possessed were "recently stolen."

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citation omitted).

"When an accused is found in possession of goods of a type recently stolen, strict proof of identity of the goods is not

-

required."  Henderson v. Commonwealth, 215 Va. 811, 812-13, 213 S.E.2d 782, 783 (1975).

> "It is not necessary that the identity of stolen property should be invariably established by positive evidence.  In many such cases identification is impracticable, and yet the circumstances may render it impossible to doubt the identity of the property, or to account for the possession of it by the accused upon any reasonable hypothesis consistent with his innocence."

Reese v. Commonwealth, 219 Va. 671, 673, 250 S.E.2d 345, 346 (1979) (quoting Gravely v. Commonwealth, 86 Va. 396, 402, 10 S.E. 431, 433 (1889)).  The trial judge concluded the evidence supported the granting of the inference instruction.

The undisputed evidence is that Wilson was walking near the lodge shortly after the burglary carrying a flashlight, an unusually large number of quarters, and a metal cam or disc similar to a piece missing from the lodge's pinball machine.  The presence of the metal cam or disc found among the inordinate number of quarters that Wilson possessed, which were the only denomination of coins recently stolen from the lodge, was sufficient for the fact finder to consider whether these were the recently stolen items, from which they could infer that Wilson was the thief.  Accordingly, the trial court did not err by instructing the jury on recently stolen property.

## III.

Finally, Wilson contends the evidence is insufficient to support his convictions.  "On appeal, 'we review the evidence in

-

the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence proved that Strickland secured the lodge at approximately 3:15 a.m. on January 1, 2000. He stated that the lodge had a motion detector alarm system that was triggered at 5:29 a.m. When Stickland met the police at the lodge he observed that the coin boxes from several of the machines had been pried open. Richard Mundy, president of the company that owned the machines, testified that no one had permission to tamper with the machines. He also noted that the machines accepted only quarters and bills. Darby testified that he recovered a coin box from one of the machines in the woods along the road where Wilson was walking. At the time of his arrest, Wilson carried 699 quarters or $174.75 in quarters. He also had a metal cam or disc among the quarters that was similar to ones on the metal lock on one of the lodge's pinball machines. Anthony found Wilson three-tenths of a mile from the lodge a short time after the burglary.

In a criminal prosecution for larceny, evidence showing "[p]ossession of goods recently stolen is prima facie evidence of guilt . . . and throws upon the accused the burden of accounting for that possession." Hope v. Commonwealth, 10 Va. App. 381, 385, 392 S.E.2d 830, 833 (1990) (en banc) (citation omitted).

-

While it is often said that unexplained possession of recently stolen property supports an inference that the possessor is the thief, this same inference applies where the defendant's explanation for how he came into possession of the property is "patently incredible and totally unsupported." Catterton v. Commonwealth, 23 Va. App. 407, 411, 477 S.E.2d 748, 750 (1996). Wilson claimed that he won the 699 quarters in a poker game at a nearby apartment. He gave no details about the claimed poker game or who was in the game. Furthermore, he gave no explanation for where he got the metal cam or disc like the one from the lodge's pinball machine. The presence of the metal cam found in Wilson's pocket among the large number of quarters was sufficient for the fact finder to conclude that these items were the ones recently stolen from the machines at the lodge. Wilson's bare assertion that he had won the money in a poker game, when considered with the lack of detail about the game or its participants, the fact that Wilson had a metal cam like that from the lodge's pinball machine among the quarters, and the unlikelihood that these quarters had come from a poker game was sufficient to permit the fact finder to reject Wilson's account as not credible. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The Commonwealth's evidence

-

was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Wilson was guilty of burglary, third offense petit larceny, and tampering.

Accordingly, we affirm the convictions.

<u>Affirmed</u>.

Benton, J., dissenting.

I dissent from the majority's holding that the evidence was sufficient to establish probable cause to arrest Itemus Wilson for public drunkenness. I would, therefore, hold that the money discovered in Sergeant Anthony's search incident to that arrest was unlawfully seized.

Probable cause to arrest requires more than a showing that an officer had a "suspicion" that the suspect was engaged in criminal activity. Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000).

> The test of constitutional validity is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense ha[d] been committed. If the arresting officer had no probable cause to arrest then he could not lawfully search the defendant's person.

Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970) (citations omitted).

The evidence proved that an hour and a half after learning of a burglary on New Year's Day, Sergeant Anthony was going home when he approached Wilson, who was walking along a road, three-tenths of a mile from the building. Before stopping to question Wilson, the sergeant did not observe anything about his gait that suggested Wilson was intoxicated. He testified that he saw Wilson walking on the shoulder of the road and that Wilson was not impeding traffic. After the sergeant stopped his

-

car, Wilson continued to walk past the car.  In fact, the sergeant testified that Wilson walked on the shoulder of the road, not the street, as he passed the sergeant's car.  He did not testify that Wilson swayed or staggered as he walked.  Rather, he acknowledged that Wilson appeared to recognize the lack of wisdom of walking in the roadway.

The sergeant stopped Wilson, told him about the burglary, and asked him whether he knew anything about it.  When the sergeant asked Wilson where he had been, Wilson said he had been playing poker all night and had won some money.  At one point in the conversation, the sergeant asked if he could search Wilson.  Wilson told the sergeant he did not want the sergeant to search him.  The sergeant testified that after further conversation with Wilson, he arrested Wilson for being drunk in public.  He then searched Wilson incident to the arrest.

According to Code § 4-1.100, "intoxicated" means "a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior."  The sergeant testified that he arrested Wilson because Wilson smelled of alcohol, Wilson's eyes appeared dilated and bloodshot, his speech was slurred and mumbled, and Wilson was staggering from side to side.  The sergeant testified, however, that he had not met Wilson before this occasion and therefore was not familiar with the normal appearance of Wilson's eyes or speech pattern of

-

Wilson's voice.  Indeed, the trial judge noticed that Wilson's eyes were bloodshot at trial.

Although the sergeant testified that Wilson was continually swaying from one leg to the other, he admitted that Wilson remained in a stationary position and that people often are nervous when stopped by police.  He also admitted that Wilson never fell or stumbled while walking and that Wilson was not verbally or physically unruly.  The sergeant further testified that he asked Wilson several questions and that Wilson gave a reasonable response to every question posed to him.

Unlike the appellant in Debroux v. Commonwealth, 32 Va. App. 364, 368, 528 S.E.2d 151, 153 (2000), Wilson was not "loud and disorderly" and did not respond as if he "didn't know where he was, [or] what was going on."  Further, unlike the appellant in Leake v. Commonwealth, 27 Va. App. 101, 110, 497 S.E.2d 522, 527 (1998), who stopped his truck "in the travel portion of a . . . highway" to clean it even though there was a usable shoulder on the road, Wilson had not behaved strangely and engaged in no conduct on the roadway that indicated he was not aware of where he was.  When the sergeant stopped Wilson, Wilson was simply walking on the shoulder of a two-lane road.  Wilson's gait was unremarkable and his responses to the sergeant's initial questions, in which he indicated he had been up all night, provided a justifiable reason why his eyes may have appeared dilated and bloodshot.  In addition, Wilson's response

-

to the sergeant that he had had an alcoholic drink did not indicate that Wilson was "intoxicated" to a degree prohibited by the statute. The law does not prohibit walking along a street after drinking alcohol.

Critically, the sergeant did not request that Wilson perform any field sobriety test, which could have confirmed or dispelled his suspicion that Wilson was intoxicated. In Weaver v. Commonwealth, 29 Va. App. 487, 513 S.E.2d 423 (1999), we affirmed a conviction for driving while intoxicated where the appellant's eyes appeared watery and glassy, the appellant had open beer bottles in his car, the appellant admitted that he had drunk 3 or 4 beers, the last of which had been 30 minutes earlier, and the appellant "failed several field sobriety tests." 29 Va. App. at 490, 513 S.E.2d at 425. Although the sergeant may have been justified under the totality of these circumstances to further investigate his suspicion by sobriety tests or breath tests to ascertain whether Wilson was "intoxicated," the facts known to the sergeant fall short of probable cause to arrest for public intoxication. The evidence strongly suggests the arrest occurred solely because Wilson refused to consent to a search of his person.

Based on the totality of these circumstances, I would hold that the sergeant did not have probable cause to arrest Wilson for being "intoxicated" in public. For these reasons, the trial

-

judge should have granted the motion to suppress.  Accordingly,
I would reverse and remand for a new trial.