**Lisa AMAECHI, Plaintiff,**

v.

**Matthew WEST et al., Defendants.**

**No. Civ.A. 99–783–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 28, 2000.

---

Victor Michael Glasberg, Victor Glasberg & Associates, Alexandria, VA, for Plaintiff.

John J. Brandt, Brandt, Jennings, Roberts, Davis & Snee, Falls Church, VA, for Defendants.

### MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment on the five remaining counts of Plaintiff Lisa Amaechi's 42 U.S.C. § 1983 Complaint.[1] The case involves the constitutionality of an alleged body cavity search Defendant Officer Matthew West ("Officer West") conducted on Ms. Amaechi during the enforcement of a magistrate-authorized arrest warrant by Defendants Officer West and Officer Bernard R. Pfluger ("Officer Pfluger") of the Dumfries, Virginia Police Department. The Court, in its previous Order of January 13, 2000, granted summary judgment on all three counts related to Officer Pfluger and Defendant Town of Dumfries, Virginia ("Dumfries"), but denied summary judgment on the two counts associated with Officer West.[2] *See* Order, *Amaechi v. West,* No. CIV.A. 99–783–A (E.D.Va. Jan. 13, 2000) (Lee, J.) (reserving the right to supplement Order with Memorandum Opinion if appeal taken by either party). Defendants have since appealed the denial of summary judgment with respect to the two counts against Officer West. Accordingly, the question before the Court is whether the alleged body cavity search conducted by Officer West on Ms. Amaechi was reasonable under the Fourth Amendment such that Officer West is protected from her claims by the doctrine of qualified immunity.[3] For the reasons stated below, the Court finds that the challenged search crossed evident Fourth Amendment lines and, therefore, precludes Officer West from invoking the protection of qualified immunity.

### I. BACKGROUND

In August 1997, Ms. Amaechi was a twenty-nine year old resident of Dumfries, Virginia. She stood about 5'4" tall and weighed around 135 pounds. She is the mother of five children who, in August 1997, ranged in age from four to eleven years old. At all times relevant to this controversy, Ms. Amaechi lived with her five children and her husband, Mr. Oliver Amaechi ("Mr. Amaechi"), to whom she has been married since 1988. During this same time, Officers Pfluger and West were members of the Dumfries Police Department, Pfluger serving as supervising officer for the newly-commissioned "auxiliary officer" West.

On August 12, 1997, Officers Pfluger and West arrested Ms. Amaechi at her residence pursuant to a valid arrest warrant alleging her violation of a local noise ordinance. Prior to the arrest, residents of the Amaechi household would occasionally

---

1. The original Complaint contained seven counts. Two of the counts, II and VII, were withdrawn by Plaintiff. The following were the five remaining counts at the time of Defendants' motion:

   Against Defendant Town of Dumfries:
   (1) Count I—Failure to Train;
   Against Defendant Officer Bernard R. Pfluger:
   (2) Count III—Wrongful Arrest;
   (3) Count IV—Failure to Instruct and Supervise;
   Against Defendant Officer Matthew West:
   (4) Count V—Unconstitutional Search;
   (5) Count VI—Assault and Battery (Virginia state law).

2. Collectively, the three Defendants will be referred to throughout the Opinion as "Defendants."

3. Procedurally speaking, the issue for the Court is whether, viewing the facts in the light most favorable to Ms. Amaechi, there exists a genuine issue as to any material fact with regard to the two counts against Officer West. *See* FED.R.CIV.P. 56(c). As the Court will explain below, *see infra* Part III.A, the record suggests that genuine issues for trial do indeed exist, necessitating the denial of summary judgment for that reason alone—notwithstanding the more substantive reasons for denying summary judgment outlined in the remainder of this Opinion. *See infra* Part III.B.1–2.

play music at high volume, thereby disturbing a neighbor living in the adjoining townhouse. Such behavior inspired a series of noise complaints against the Amaechis by this neighbor, which culminated in a police visit to the Amaechi residence on August 10, 1997.

At around 10:00 a.m. on that day, Officer Steven Hargrave ("Officer Hargrave") of the Dumfries Police Department came to the Amaechi household and instructed Ms. Amaechi to turn down the volume of her radio. She did so; but finding Officer Hargrave to be "rude," she called the Prince William Police Department to complain of his behavior. Prince William Officer Mark Atkinson was dispatched to the scene to investigate. Upon arrival, he suggested that the Amaechis mediate the noise dispute with their neighbor by using a county mediation service. Mr. Amaechi, who was also in the house at the time of the police visit, rejected the proposal. Consequently, two days after the noise incident, Officer Hargrave secured an arrest warrant charging Ms. Amaechi with a misdemeanor violation of the Dumfries noise ordinance.[4]

It is undisputed that Virginia law allows the issuance of a summons, as opposed to an arrest warrant, where there is reason to believe that a person charged with a misdemeanor will appear in the court having jurisdiction of the offense charged. *See* VA.CODE ANN. § 19.2–73 (Michie 1995). Nevertheless, the aforementioned arrest warrant was given to Officer Pfluger and he, along with his trainee, Officer West, served it on August 12, 1997.

At about 9:30 p.m. that evening, Officer Pfluger knocked at the Amaechis' door. Mr. and Ms. Amaechi answered the door together, at which time Officer Pfluger asked for Ms. Amaechi, told her that she was under arrest, and handcuffed her.

This all took place right inside the front door of the Amaechi home with Mr. Amaechi and the children watching. At the time Officer Pfluger knocked at the door, Ms. Amaechi was nude in her bathroom upstairs getting ready for bed. Upon hearing the knocking downstairs, she slipped on a "light house dress" that she occasionally wore as a robe and followed her husband downstairs to answer the door. The house dress was described in pleadings as a "long wrap with spaghetti straps and buttonholes down the front." Most of the buttons were missing, however, and, hence, the dress was buttoned at the top but open from the lower chest down.

Ms. Amaechi remained nude underneath the dress as she approached the front door. Neither she nor her husband mounted any resistance or displayed a lack of cooperation during the arrest. Instead, they complied with all instructions promptly and efficiently—as documented in police reports created at the scene. Upon being advised that she was to be handcuffed and arrested on the spot, however, Ms. Amaechi did point out to the officers that she was nude underneath the dress and would like permission to get dressed. Officer Pfluger denied this request. The veteran policeman then proceeded with the initial arrest before handing Ms. Amaechi over to Officer West, a "rookie" with the Dumfries Police Department,[5] for the search incident to arrest.

Officer West walked Ms. Amaechi to his police car, which was parked in front of the row of town homes where the Amaechis lived—in plain view of neighborhood residents. On reaching the cruiser, whose back door Officer West had opened, Ms. Amaechi proceeded as though to enter the back seat. Officer West stopped her descent into the vehicle, however, informing her that he had to search her before she

---

4. As a side note, the charges against Ms. Amaechi were dismissed after she agreed to mediate the noise dispute with her neighbor.

5. Officer West stated in his deposition that he had made no more than five total arrests

prior to the Amaechi arrest. *See* West Dep. at 40. Moreover, he had completed his preliminary training only six weeks earlier. He began his one-year probationary period of employment with the police force on July 2, 1997.

entered the car. Ms. Amaechi protested that she was wearing no clothes underneath the house dress. Nonetheless, Officer West proceeded to run his hands over her hips, inside her now-opened dress. Moreover, with one hand palm-up, he allegedly swiped across her groin area, at which time the tip of his finger slightly penetrated her genitals.[6] Horrified, furious, and confused, Ms. Amaechi purportedly jumped back, exclaiming that she had warned him she was wearing no undergarments. Officer West did not respond to her exclamation; rather, he completed his search and permitted her to enter the car.

Soon thereafter, Ms. Amaechi filed a seven-count Complaint in federal district court, alleging that the touching of her genitals by Officer West in "strip search" fashion violated both the Fourth Amendment to the United States Constitution, *see generally* 42 U.S.C.A. § 1983 (West Supp. 1999), and Virginia state law (assault, battery, and intentional infliction of emotional distress). Two of the counts were dropped by Plaintiff during the course of the litigation, *see supra* note 1, and, after oral argument, the Court granted summary judgment on the three counts pertaining to Officer Pfluger and the Town of Dumfries. *See* Order, *Amaechi v. West*, No. CIV.A. 99–783–A (E.D.Va. Jan. 13, 2000) (Lee, J.). The Court denied summary judgment, however, with regard to the two counts lodged against Officer West, Counts V (unconstitutional search) and VI (assault and battery). *See id.* It is from this denial that Defendants appeal to the Court of Appeals for the Fourth Circuit. *See* Defs.' Notice of Appeal at 1 (filed Jan. 24, 2000).

## II. STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure ("FRCP") 56, a court should grant summary judgment if the moving party demonstrates that there is no genuine issue as

to any material fact and that it is entitled to judgment as a matter of law. *See* FED. R.CIV.P. 56(c).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See* FED.R.CIV.P. 56(e).

The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See id.*

In determining whether a party is entitled to summary judgment, the record is viewed in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## III. ANALYSIS

Procedurally speaking, there are genuine issues of material fact for trial here with regard to the counts against Officer West. Insofar as the Court's denial of summary judgment on those claims is concerned, recognition of such genuine issues would normally be enough to support this

---

**6.** Officer West denies touching Plaintiff's genitals. *See* West Dep. at 81 ("I didn't do any groin area search. I did what looks to be a pat down for weapons."); *see also id.* at 68 (series of denials by Officer West to questions of whether he touched Plaintiff's knees, inner thighs, buttocks, crotch area, or vaginal area). Both parties, however, agree that the entire search took only a few seconds. *See* Amaechi Dep. at 92.

ruling—the analysis could, essentially, end there. *See infra* Part III.A. Nonetheless, because of the severity of the allegations here, the Court will also outline the substantive legal reasons for denying Defendants' motion for summary judgment on the claims against Officer West.

### A. *Genuine Issues of Material Fact*

■ First, as the Court thoroughly articulated during oral argument on Defendants' Motion for Summary Judgment, there are obvious and genuine issues of material fact with regard to the claimed "touching" that took place during the search of Ms. Amaechi by Officer West. Resolution of these issues is within the province of a fact-finding jury, not that of the judge on a summary judgment motion. *Cf.* FED.R.CIV.P. 56. More importantly, the Court's disposition denying summary judgment because of such genuine issues of material fact is not appealable in this matter. *See generally Johnson v. Jones,* 515 U.S. 304, 311, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

Admittedly, a district court's order denying a defendant's motion for summary judgment is an immediately appealable collateral order or "final decision" under 28 U.S.C. § 1291 when the defendant is a public official asserting qualified immunity—and the issue appealed involves not which facts the parties might be able to prove but, rather, whether or not certain given facts showed a violation of clearly established law. *See id.* at 311, 115 S.Ct. 2151 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). In *Johnson v. Jones,* however, the United States Supreme Court unambiguously held that *not all denials of sum-mary judgment in the context of a quali-fied immunity defense are appealable:*

> [W]e hold that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a "genuine" issue of fact for trial.

*Id.* at 319–20, 115 S.Ct. 2151.

Simply put, the Fourth Circuit has no jurisdiction over an appeal that involves the issue of whether or not certain conduct occurred.[7] *See Winfield v. Bass,* 106 F.3d 525, 529–30 (4th Cir.1997).

The issue of whether or not certain conduct occurred, however, is indeed the precise factual conundrum before the Court—specifically, whether Officer West actually touched, swiped, felt, or entered Ms. Amaechi's genital area during the search in question. This is the most blaring example of a genuine issue for trial. Officer West insists that there was no such touching. *See supra* note 6. To the contrary, Ms. Amaechi contends that the search was analogous in nature to a constitutionally violative "strip" or "body cavity" search, in that Officer West's finger entered her genitals during a search incident to an arrest based merely on her violation of a local noise ordinance. *See, e.g.,* Amaechi Decl. at 4. Under the circumstances, and after a thorough review of the record, the Court finds that this disagreement over the conduct in question presents a genuine issue of material fact for trial to be determined by a jury. Given the Supreme Court precedent cited above, the issue would not be

---

7. In *Behrens v. Pelletier,* the Supreme Court examined this same issue, ultimately crystallizing its *Johnson* holding:

> *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly

"separable" from the plaintiff's claim, and hence there is no final decision.... *Johnson* reaffirmed that summary judgment determinations are appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity—typically, the issue whether the federal right allegedly infringed was "clearly established." *See Behrens v. Pelletier,* 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (alteration in original) (citations omitted).

appropriately adjudicated via summary judgment.[8]

Other genuine issues of material fact exist with regard to all of the following: (1) upon her arrest, whether Ms. Amaechi asked the officers if she could change into more suitable clothes for her transport to the police station; (2) what exactly Officer Pfluger instructed Officer West to do when he handed Ms. Amaechi over for a search incident to arrest; and (3) the actual intent of Officer West during the search of Ms. Amaechi. The resolution of these issues would lend clear insight into the Fourth Amendment viability or "reasonableness" of the search in question—and the availability of a qualified immunity defense. Each involves a question of whether certain conduct occurred and must, therefore, be resolved by the fact-finder at trial. Consequently, the Fourth Circuit has no jurisdiction to hear Defendants' appeal of this Court's denial of summary judgment on the claims against Officer West.

### B. The Fourth Amendment and Qualified Immunity

In relevant part, the Fourth Amendment to the Constitution secures the right of the people to protection from "unreasonable searches and seizures." U.S. Const. amend. IV. The doctrine of qualified immunity protects government officials from civil damages in 42 U.S.C. § 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ The Supreme Court recently set forth a two-part test for analyzing a claim of qualified immunity in the context of an alleged constitutional violation. *See Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 1696–97, 143 L.Ed.2d 818 (1999). The

evaluating court must first ascertain whether the plaintiff has alleged the deprivation of an actual constitutional right. *See id.* at 1697 (quoting *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999)); *see also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Taylor v. Waters,* 81 F.3d 429, 433 (4th Cir.1996). If so, the court proceeds to determine whether that right was clearly established at the time of the alleged infringement. *See Wilson,* 119 S.Ct. at 1697 (quoting *Conn,* 119 S.Ct. at 1295).

■ In order for a right to have been clearly established, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Swanson v. Powers,* 937 F.2d 965, 969 (4th Cir.1991) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034). Moreover, to determine whether a right was clearly established at the time of the claimed violation, courts in this circuit need not look beyond the decisions of the Supreme Court, the Fourth Circuit, and the highest court of the state in which the case arose.[9] *See Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980). Lastly, the Court must consider whether a reasonable person in the official's position would have known that his conduct would violate the identified right. *See Anderson,* 483 U.S. at 639, 107 S.Ct. 3034; *Taylor,* 81 F.3d at 433.

Deciding the constitutional question before the qualified immunity question in the manner prescribed by the Supreme Court "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *See Wilson,* 119 S.Ct. at 1697 (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

---

8. Moreover, as discussed earlier, the Court's finding here is not appealable.

9. Predictably, an official will ordinarily retain a qualified immunity defense if the right is recognized in some other circuit, but not in

the Fourth Circuit. The nonexistence of a case holding the defendant's identical conduct to be unlawful, however, does not prevent the denial of qualified immunity. *See infra* note 14.

### 1. The Constitutional Question

Given this precedent, and viewing the facts in the light most favorable to Plaintiff, the Court finds that the alleged search incident to arrest conducted by Officer West violated Ms. Amaechi's Fourth Amendment right to a reasonable search, along with clearly established standards emanating from that right.

The constitutional prong of the qualified immunity analysis here raises the following query: whether the scope of a police officer's authority under the Fourth Amendment to conduct a warrantless search of an arrestee incident to a lawful arrest includes the authority to search the arrestee's body cavities. *See generally Commonwealth v. Gilmore,* 27 Va.App. 320, 498 S.E.2d 464, 468 (1998). Balancing the needs of the particular search against the invasion of the personal rights that the search entailed, *see generally Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court holds that it does not.

■ Generally speaking, searches conducted without the prior approval of a judge or magistrate are per se "unreasonable" under the Fourth Amendment. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (citations omitted). One of the established exceptions to the warrant requirement, however, is the search incident to a lawful arrest. *See United States v. Robinson,* 414 U.S. 218, 224, 226, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (holding that searches incident to arrest "meet the Fourth Amendment's requirement of reasonableness"). The Supreme Court has articulated the permissible scope of a warrantless search incident to arrest, explaining that it authorizes the police to conduct a full search of the arrestee's person, *see id.* at 235, 94 S.Ct. 467, along with the area within the arrestee's immediate control. *See Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Officers conducting such a search may also seize the arrestee's personal effects that are evidence of the crime. *See United States v. Edwards,* 415 U.S. 800, 804–05, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

But the authority of the police under the Fourth Amendment to conduct a full search incident to arrest, without a warrant, is only "skin deep." *See Gilmore,* 498 S.E.2d at 468. The Supreme Court has stated, quite clearly, that the considerations that justify the authority to search incident to a lawful arrest—protect officers from the immediate danger of concealed weapons and prevent destruction of evidence—"have little applicability with respect to searches involving intrusions beyond the body's surface." *Schmerber v. California,* 384 U.S. 757, 769, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).[10] The warrant requirement of informed and detached consideration is "indisputable and great" when officers seek to invade another's body for evidence incident to an arrest.[11] *See id.* at 770, 86 S.Ct. 1826; *cf. Coolidge v. New Hampshire,* 403 U.S. 443, 484, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

---

**10.** Explaining itself further, the high Court opined that:

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any intrusions on the mere chance that desired evidence may be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

*Schmerber,* 384 U.S. at 769–70, 86 S.Ct. 1826.

**11.** In other words,

> [s]earch warrants are ordinarily required for searches of dwellings, and absent an emergency, *no less could be required where intrusions into the human body are concerned.* The requirement that a warrant be obtained is a requirement that inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

*Schmerber,* 384 U.S. at 770, 86 S.Ct. 1826 (emphasis added) (quoting *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)).

Moreover, the means and procedures employed by authorities conducting searches involving intrusions into the body must also satisfy Fourth Amendment standards of reasonableness. *See Schmerber*, 384 U.S. at 768, 86 S.Ct. 1826. Thus, searches incident to arrest are limited in nature to a pat-down and an examination of the arrestee's pockets—absent exigent circumstances, they do not extend to strip searches or bodily intrusions. *See generally Giles v. Ackerman*, 746 F.2d 614, 616 (9th Cir.1984).

■ With this backdrop, the Court views the alleged penetration of Ms. Amaechi's genital area by Officer West during his search incident to her arrest as intrusive in nature, analogous to an improper "body cavity" or "strip" search, and constitutionally unjustified and unreasonable under the circumstances. A review of applicable precedent illuminates the propriety of this finding considerably.

In *Illinois v. Lafayette*, the Supreme Court upheld the Fourth Amendment reasonableness of a police search incident to arrest of an arrestee's shoulder bag after the arrestee was handcuffed and taken to the police station for disturbing the peace. *See Illinois v. Lafayette*, 462 U.S. 640, 641, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). Unlike here, the Court likened the search to an "inventory" search, outlining the justifications under the circumstances of orderly police administration, protection of the subject's property, deterrence of false claims of theft against police, security, and identification of the suspect.[12] *See id.* at 643–47, 103 S.Ct. 2605. In doing so, however, the Court provided important insight into the unconstitutional nature of a search like the one in controversy here. Explaining the difference between a stationhouse inventory-type search and a more intrusive search such as that conducted on Ms.

Amaechi, the Court reasoned that police conduct that would be impractical, unreasonable, or embarrassingly invasive on the street can more readily be performed at the station:

> For example, *the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street,* but the practical necessities of routine jail administration may even justify taking a prisoner's clothes before confining him....

*Id.* at 645, 103 S.Ct. 2605 (emphasis added).

Admittedly, Ms. Amaechi was not "disrobed" per se by Officer West. But it might as well have been so, given her state of dress (or undress) and the officer's probing of her skin and genital area.

The Fourth Circuit, in *United States v. Dorlouis*, addressed a defendant's challenge to a strip search of sorts conducted upon the police stop and arrest of four suspects driving a motor vehicle who were suspected of drug trafficking. *See United States v. Dorlouis*, 107 F.3d 248, 251 (4th Cir.1997). Knowing that one or more of the occupants were carrying cash from a transaction made earlier in the day, the officers placed an arrestee in the jump seat of a police van, pulled his trousers down, and the money fell out.[13] *See id.* at 256. In upholding the reasonableness of the strip search, the court explained that "the search in question was not ... unconstitutional" because it *"did not occur on the street subject to public viewing* but took place in the *privacy of the police van." Id.* (emphasis added). Not so much can be said of the search of Ms. Amaechi. Instead, with no documented inkling of a threat to the officers' safety or her potential to destroy evidence, she was essentially paraded out to a public street with a

---

**12.** "The governmental interests underlying a stationhouse search of the arrestee's person and possessions may in some circumstances be even greater than those supporting a search immediately following arrest. Consequently, the scope of a stationhouse search will often vary from that made at the time of the arrest." *Lafayette,* 462 U.S. at 645, 103 S.Ct. 2605.

**13.** The boxer shorts of the arrestee were not removed, however. *See Dorlouis,* 107 F.3d at 256.

half-buttoned night dress on—exposing a significant portion of her nude body—and intrusively searched up and down in plain view of her husband, children, and neighbors. This, in the Court's view, was clearly unreasonable and violative of her Fourth Amendment rights.

Other circuits have also looked unfavorably on "strip" or "body cavity" searches conducted incident to arrest, most holding that they must be justified by at least a reasonable suspicion that the arrestee is concealing contraband or weapons—a suspicion alarmingly missing in the facts at bar. *See Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1271 n. 7 (7th Cir.1983) (asserting that (1) strip or body cavity searches incident to arrest are only constitutional where there is a reasonable belief that arrestee is concealing contraband and (2) that routine post-arrest strip search of misdemeanants is unconstitutional); *see also Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1446, 1449 n. 11 (9th Cir.1991) (holding that a strip search with visual body cavity inspection is not justifiable as a search incident to arrest under *Robinson;* instead, such searches are governed by a higher standard); *cf. Swain v. Spinney,* 117 F.3d 1, 5 (1st Cir.1997) (opining that strip and visual body cavity searches must be justified by at least a reasonable suspicion that the arrestee is concealing contraband or weapons).

Moreover, both strip and body cavity searches entailing the inspection of the anal and/or genital areas have been accurately described as demeaning, dehumanizing, undignified, humiliating, embarrassing, repulsive, degrading, and extremely intrusive of one's personal privacy. *See, e.g., Mary Beth G.,* 723 F.2d at 1272; *Wood v. Clemons,* 89 F.3d 922, 928 (1st

Cir.1996). This Court finds these labels particularly precise when, as with Ms. Amaechi, the arrestee is merely a misdemeanant who has displayed no hostility towards the officers, presented no documented threat of violence or evidence-tampering, and could easily have been searched under much more reasonable conditions. Further support for this finding is evidenced in the invalidation of blanket strip search policies against nonviolent misdemeanants by the Fourth Circuit, *see generally Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), along with seven other United States Courts of Appeals. *See Newkirk v. Sheers,* 834 F.Supp. 772, 788 (E.D.Pa.1993) (outlining the eight applicable circuit-level cases). In each of the eight circuits, the arresting officers under such circumstances must have reasonable individualized suspicion that a misdemeanor detainee is carrying or concealing contraband. *See, e.g., Mary Beth G.,* 723 F.2d at 1273. In addition, individualized suspicion sufficient to warrant a strip search of the arrestee in these eight circuits is based on factors such as the nature of the offense, the arrestee's appearance and conduct, and any prior arrest record. *See Fuller,* 950 F.2d at 1446. As stated above, the present circumstances involve the arrest of a cordial noise violation misdemeanant presenting no threat to the arresting officer—and with no prior arrest record.

Consequently, the Court opines that Ms. Amaechi's right to be free from a strip or body cavity search on the street outside of her house incident to an arrest for a noise violation misdemeanor is clearly and authoritatively established in both the Supreme Court and the Fourth Circuit.[14] *See generally Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980). For the reasons

---

**14.** Stated another way, the existing authority is such that the unlawfulness of Officer West's alleged search is manifest and apparent. *See Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *see also Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738; *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir.1992) (explaining that "[t]he fact that an exact right allegedly violated has not earlier been specifically recognized by any court

does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes" and that " '[c]learly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked").

stated above, the "contours of the right" have been so conclusively drawn as to leave no doubt that Officer West's alleged actions were unconstitutional.

### 2. The Qualified Immunity Question

█ Having met the other elements necessary to deny the defense of qualified immunity to an eligible official, the Court's last inquiry is whether a reasonable policeman in Officer West's position would have known that his alleged conduct violated the right identified above. *See Anderson*, 483 U.S. at 639, 107 S.Ct. 3034; *see also supra* Part III.B. The Court holds that a reasonable officer in August 1997 would indeed comprehend that a vaginal cavity search under the circumstances surrounding the arrest of Ms. Amaechi—no matter how rapidly performed—would violate her clearly established rights. It follows that Officer West is not entitled to a defense of qualified immunity.

Undoubtedly, the qualified immunity defense is a useful tool to shield government officials performing their duties from the burdens of trial and monetary liability. *See Harlow*, 457 U.S. at 817–18, 102 S.Ct. 2727. Without such a defense, government officials may not perform their discretionary duties as vigorously as required, instead acting timidly to avoid the risk of being haled into federal court. *See Anderson*, 483 U.S. at 638, 107 S.Ct. 3034. Society would bear the brunt of a system without such protection, including the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public positions. *See Harlow*, 457 U.S. at 814, 102 S.Ct. 2727. The Court has no such concerns here.

To the contrary, given the precedent documented above, along with the Fourth Amendment training a police officer receives prior to commencing the profession of law enforcement,[15] the Court suffers no hesitation in finding that a reasonable officer in Officer West's position would not have conducted a vaginal search on Ms. Amaechi.

As stated earlier, based on the record, Ms. Amaechi presented no documented physical threat whatsoever to the arresting officers. Similarly, the offense for which she was to be arrested involved no potential for the concealment of evidence. Thus, instead of handcuffing Ms. Amaechi on the spot and rushing her out to the police vehicle, a reasonable officer may first have granted Ms. Amaechi's request to change, while supervised, into· dress more suitable for her transport to the police station. More importantly, that same reasonable officer would have known not to conduct a vaginal body cavity search incident to a misdemeanor noise violation arrest on a semi-clad arrestee—in front of that arrestee's children and in the middle of a public neighborhood street. Accordingly, Officer West was conclusively unreasonable in not recognizing the clearly established right of Ms. Amaechi to be secure from the disputed search.

### IV. CONCLUSION

This Memorandum Opinion supplements the Court's Order of January 13, 2000 granting in part, and denying in part, Defendants' Motion for Summary Judgment. *See* Order, *Amaechi v. West*, No. CIV.A. 99–783–A (E.D.Va. Jan. 13, 2000) (Lee, J.) (reserving the right to supplement Order with Memorandum Opinion if appeal taken by either party). As stated in that Order and for the reasons stated herein, Defendants' Motion for Summary Judgment with regard to the counts against Officer West is hereby DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.

---

**15.** Officer West was trained at the Rappahannock Criminal Justice Academy, which is certified by the Commonwealth of Virginia to train law enforcement personnel.