**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4329

PHILIPPE DORLOUIS, a/k/a Terrance,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4330

JACQUES PAUL, a/k/a Earl Phillip,
a/k/a "E",
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4331

MARC CHARLES, a/k/a "K", a/k/a
Carlo Pierre,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4332

NAJAC PAUL, a/k/a Joseph Derrick,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 96-4333

SALLIE SCHULTZ,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-95-145)

Argued: November 1, 1996

Decided: February 24, 1997

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
HARVEY, Senior United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Harvey wrote the opin-
ion, in which Judge Murnaghan and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Michelle Marie Memena Price, KING, ALLEN &
GUTHRIE, Charleston, West Virginia, for Appellants. Philip Judson
Combs, Assistant United States Attorney, Charleston, West Virginia,
for Appellee. **ON BRIEF:** Michael R. Cline, MICHAEL R. CLINE
LAW OFFICES, Charleston, West Virginia, for Appellant Dorlouis;
Christopher J. Heavens, HEAVENS LAW OFFICES, Charleston,
West Virginia, for Appellant Charles; Douglas Miller, Sr., Institute,
West Virginia, for Appellant Paul; Andrew A. Raptis, Charleston,

2

West Virginia, for Appellant Schultz. Rebecca A. Betts, United States Attorney, Miller B. Bushong, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

**OPINION**

HARVEY, Senior District Judge:

The five appellants bringing this appeal were convicted by a jury of conspiring to distribute crack cocaine and of related offenses. They here challenge their convictions on numerous grounds. Additionally, appellant Najac Paul appeals the sentence he received. Because we conclude that all five appellants were properly arrested, charged and convicted and that their other assignments of error are without merit, we affirm their convictions. We also affirm the sentence received by appellant Najac Paul.

I

In mid-July of 1995, Yvonne Renee Moore met appellant Sallie Schultz while Moore was working as a prostitute for Annie's Escort Service in Charleston, West Virginia. Moore told Schultz that she wanted to make some extra money. Schultz then arranged for Moore to meet appellants Philippe Dorlouis and Najac Paul who came to Moore's apartment in a housing project in mid-August of 1995. Dorlouis and Najac Paul gave Moore a half ounce of crack cocaine to sell. Moore was to sell twenty-one "rocks" for $40 and was to repay $700 to these appellants, retaining $140 for herself. An admitted crack addict, Moore smoked some of the cocaine and lost the rest. Fearing that Dorlouis and Najac Paul would injure her if she did not pay what she owed them, Moore on August 28, 1995 contacted Charleston police officer William Hart, a member of the city's Metropolitan Drug Enforcement Network Team ("MDENT"). Moore agreed to work for this law enforcement agency as a confidential informant.

Moore was given $700 in marked money to pay her debt. After Moore had telephoned them, appellants Jacques Paul and Marc Charles and also appellant Schultz met with Moore at her apartment

3

on the afternoon of August 29, 1995. Her telephone calls were monitored and recorded by MDENT officers. Moore paid Jacques Paul and Charles the $700 she owed for the crack given to her the prior week. Charles then gave Moore an additional bag containing 2.89 grams of crack and told her that she could pay him $275 later. Moore told Charles and Jacques Paul that she had a buyer for one ounce of crack. Charles informed her that this would cost approximately $1,550. After her meeting with these three appellants, Moore met with officers of MDENT and gave them the 2.89 grams of crack which she had received from Charles.

Later that same day, Moore returned to the MDENT office and called the pager number given to her. Charles returned her call around 9:00 p.m. and told her that the ounce of crack was available for $1,550. The officers fitted Moore with a body wire and provided her with $1,600 in marked money. At approximately 11:20 p.m., a surveillance team observed a 1992 Nissan Pathfinder, occupied by four black males, arrive at the housing project where Moore lived. Two of the individuals remained in the vehicle and two walked into the housing project. In her apartment, Moore met with Najac Paul and Dorlouis, who sold her 25.6 grams of crack for $1,600. Najac Paul and Dorlouis then left Moore's apartment with the money and got into the Pathfinder. Moore left her apartment, met with Officer Hart and gave him the 25.6 grams of crack which had been sold to her.

Shortly thereafter, the Nissan Pathfinder was stopped by officers on the Patrick Street Bridge in Charleston. At the time of the stop, Dorlouis was driving and Jacques Paul, Najac Paul and Charles were in the vehicle. These four appellants were arrested and searched, as was the vehicle. Jacques Paul was found to have in his pants pocket a baggie containing 6.46 grams of crack. He was later asked to remove his clothes, and $1,600 in marked money fell from his boxer shorts as he was undressing. In the vehicle's console, the officers recovered $985. Five Hundred Dollars of this sum was identified as being a part of the $700 in recorded money which Moore had given to Jacques Paul and Charles as a part of the earlier deal.

A superseding five-count indictment was later returned by a federal grand jury. Count One charged all five appellants with a conspiracy to distribute and possess with intent to distribute cocaine base, also

4

known as "crack," during the period from July of 1995 until August 29, 1995. Count Two charged Dorlouis, Najac Paul and Schultz with aiding and abetting in the distribution of a quantity of crack, this being the one-half ounce of crack initially fronted to Moore in mid-August of 1995. Count Three charged Jacques Paul, Charles and Schultz with aiding and abetting in the distribution of a quantity of crack, this being the 2.89 grams of crack given to Moore in the after-noon of August 29, 1995. Count Four charged Dorlouis, Jacques Paul, Charles and Najac Paul with aiding and abetting in the distribution of a quantity of crack, this being the 25.6 grams of crack sold to Moore during the night of August 29, 1995 for $1,600. Count Five charged Jacques Paul with possession of crack with intent to distribute, this being the 6.46 grams of crack which were found in his pocket at the time of his arrest a few minutes after midnight on August 30, 1995.

Numerous pretrial motions were filed by the appellants and were denied by the district judge. In particular, motions to suppress evidence seized from the Pathfinder and from Jacques Paul on August 30, 1995 were denied, as was the motion of Jacques Paul to dismiss the superseding indictment on the ground that the Speedy Trial Act had been violated. The trial was originally set for November 20, 1995, but when Moore could not be located shortly before that date, the trial was rescheduled for December 18, 1995. Following a four day trial, the jury returned with verdicts of guilty as to each defendant on each of the counts in which he or she was charged. Defendants then filed a motion for a new trial, contending that Moore had committed perjury during her trial testimony. Following an evidentiary hearing, that motion was denied by the district judge.

A sentencing hearing was later held, at which the court heard testimony relating to relevant conduct of each of the appellants and the quantity of drugs to be assessed against each. All five appellants received lengthy sentences. Dorlouis was sentenced to a term of 121 months imprisonment, and Charles received 120 months. Jacques Paul was sentenced to 97 months imprisonment, and Najac Paul was sentenced to 168 months imprisonment. Schultz received a sentence of 78 months. Substantial terms of supervised release were added to the prison terms imposed by the district judge.

Appellants have timely filed these appeals.

5

II

All five appellants first argue that their right to due process of law was violated when the superseding indictment failed to indicate the specific quantity of crack involved in the various offenses. Counts Two, Three, Four and Five all charged a violation of 21 U.S.C. § 841(a)(1). Following convictions of appellants under those Counts, the sentences which might be imposed were subject to enhancement pursuant to 21 U.S.C. § 841(b).

Counts Two, Three, Four and Five each charged offenses involving the distribution of "a quantity of cocaine base, also known as `crack'." None of the Counts thus alleged the specific amounts of crack distributed by appellants. According to appellants, since the superseding indictment failed to specifically allege the amount of crack involved, their right to due process of law was violated because the indictment failed to notify them that they would be subject to enhanced penalties under § 841(b) if convicted. Whether an indictment must allege the amount of crack involved is an issue of law which we review de novo. United States v. Han, 74 F.3d 537, 540 (4th Cir.), cert. denied, 116 S.Ct. 1890 (1996).

Appellants' due process argument overlooks the distinction between facts relevant to guilt and those that pertain to the severity of punishment. Because the amount of the drugs goes only to the sentence rather than to guilt, the quantity of drugs involved in an offense is not a substantive element of the crime which must be charged and proved at trial. United States v. Fletcher, 74 F.3d 49, 53 (4th Cir.) cert. denied, 117 S.Ct. 157 (1996); cf. United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir.), cert. denied , 114 S.Ct. 2178 (1994) (holding that the date specified in the indictment is not a substantive element of the crime). To sustain a conviction under§ 841, the government does not have to prove that any specific quantity of drugs was involved because quantity is not a substantive element of the crime. Fletcher, 74 F.3d at 53. The quantity of drugs is, however, appropriately used as a factor in calculating the sentence. Id.

Appellants' reliance on United States v. Alvarez , 735 F.2d 461 (11th Cir. 1984), is misplaced. In Alvarez, the Eleventh Circuit reversed the district court's imposition of an enhanced penalty where

6

the indictment did not specifically refer to the triggering amount of narcotics involved. See id. at 467-68. However, Alvarez was a pre-guidelines case and is no longer good law. In United States v. Perez, 960 F.2d 1569, 1574 (11th Cir. 1992), cert. denied, 507 U.S. 975 (1993), the Eleventh Circuit specifically disavowed its prior Alvarez ruling. See also United States v. Cross, 916 F.2d 622, 623 (11th Cir. 1990) (per curiam), cert. denied , 499 U.S. 929 (1991). In Perez, the Court noted that the Cross court's departure from Alvarez was explained by the Supreme Court's intervening ruling in McMillan v. Pennsylvania, 477 U.S. 79, 84, 91 (1986).

We accordingly hold that appellants' due process rights were not infringed when the superseding indictment did not specify the amount of crack involved in the crimes alleged.

III

The original indictment was returned by the grand jury on September 19, 1995. When appellants were later arraigned, the trial was initially scheduled to commence on November 20, 1995. On October 20, 1995, appellant Dorlouis filed various pretrial motions. Thereafter, other appellants filed similar motions. An initial hearing on pretrial motions was held on November 1, 1995, and a second evidentiary hearing on the motions was held on November 13, 1995.

Thereafter, because the government's key witness Moore could not be located, the government moved for a continuance of the November 20, 1995 trial date. That motion was opposed by appellants. Following a hearing, the district court granted the government's motion, and the trial was eventually scheduled for December 18, 1995. After a four day trial, the jury on December 22, 1995 returned verdicts of guilty as to each appellant on each of the counts in which he or she was charged.

Appellants' motion to dismiss the indictment because of a violation of the Speedy Trial Act, 18 U.S.C. § 3161, et seq., was denied by the court prior to the trial. Appellants now argue that the Speedy Trial Act was violated because the trial was held more than seventy days after the original indictment was returned. See  18 U.S.C. § 3161(h). The question presented is whether the time between the filing by

7

appellants of their pretrial motions and the district court's decision on the motions should be excluded from the computation of the seventy day period. We review the district court's decisions regarding the computation of time for abuse of discretion, United States v. Tinson, 23 F.3d 1010, 1012 (6th Cir. 1994), and we review the issue of delay de novo. Han, 74 F.3d at 540.

18 U.S.C. § 3161(h)(1)(F) provides as follows:

> The following periods of delay shall be excluded . .. in computing the time within which the trial of any such offense must commence:
>
> * * *
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion . . . .

In denying appellants' motion to dismiss on Speedy Trial Act grounds, the district court ordered that the period of delay from October 20, 1995 through November 28, 1995 was, pursuant to the Act, excludable in computing the time within which the trial should commence. We agree that this period of time was properly excludable under § 3161(h)(1)(F). The first pretrial motion, a motion to suppress, was filed by appellant Dorlouis on October 20, 1995. Other motions to suppress as well as additional pretrial motions were later filed by other appellants. The motions to suppress were eventually denied by the district court's Order of November 28, 1995. We agree that the period of time between the filing of the first pretrial motion and the court's final ruling on appellants' pretrial motions was properly excludable under the Speedy Trial Act.

Appellants argue that there was no delay "resulting from" any of the pretrial motions. According to appellants, § 3161(h)(1)(F) does not provide for a blanket exclusion of the time during which motions are pending. Appellants contend that the trial in this case could have been held on November 20, 1995, the original scheduled date, even

8

though motions had theretofore been filed and even though there were extensive proceedings before the court ruled on the motions.

We conclude that the filing of a pretrial motion creates excludable time whether or not it can be shown that proceedings relating to such a motion in fact delayed the trial. We construe § 3161(h)(1)(F) as providing that delay always results after the filing of a pretrial motion and that all time is excluded between such filing and the court's prompt disposition of such motion. Subsection (F) does not require that there be a determination that the period of delay in question be reasonable before it may be excluded. Henderson v. United States, 476 U.S. 321, 327 (1986).

The statutory construction urged by appellants would require in each case a detailed evidentiary examination before trial of all facts relating to the filing of a pretrial motion, the holding of a hearing and other proceedings pertaining to such a motion, and the time spent by the court in its disposition of the motion. Appellants argue that the filing of pretrial motions in this case did not cause any delay and that none of the time in question was therefore excludable. If it were necessary to litigate this question in every case, and if it were necessary for a party to show that delay actually resulted from the filing of a pretrial motion before a period of time could be excluded under § 3161(h)(1)(F), extensive pretrial proceedings would be required, including an inquiry into any delay caused by the court's research and drafting of an opinion ruling on the pretrial motion. The statute requires no such examination of the circumstances pertaining to the filing and disposition of a pretrial motion. In United States v. Smith, 750 F.2d 1233, 1234 (4th Cir. 1984), cert. denied, 471 U.S. 1057 (1985), we rejected the argument that a trial court should consider whether time excluded after the filing of a motion was reasonably necessary for the fair processing of the motion. Id. at 1234 (citing United States v. Smith, 563 F. Supp. 217 (D. Md. 1983)). More recently, the Third Circuit has held that any pretrial motion creates excludable time within the meaning of § 3161(h)(1)(F), even if it does not in fact delay the trial. United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993).

Applying those principles here, we conclude that the district court did not violate the Speedy Trial Act when it excluded from the com-

9

putation of the time for the holding of the trial the period of time between the filing of pretrial motions by appellants and the Court's disposition of such motions.

IV

Following his conviction, appellant Dorlouis filed a motion for a new trial in which other appellants joined. An evidentiary hearing on this motion was held by the district court. In an Order dated March 15, 1996, the district judge denied the motion for a new trial. Appellants here claim that their motion for a new trial should have been granted.

Appellants' motion for a new trial was based on the contention that the witness Moore committed perjury in testifying at the trial. Moore had a romantic relationship with one Benjamin Johnson, who was an inmate at the South Central Regional Jail in Charleston, where appellants were also incarcerated. After the trial, Moore wrote two letters to Johnson. In the first letter, she stated that she had been "popped" (or arrested) and that her cooperation resulted from this arrest. In the second letter, she indicated that she had been compelled to cooperate with law enforcement officials in order to avoid being arrested. These statements contradict the trial testimony of both Moore and law enforcement officers, all of whom testified that Moore initiated the contact with Officer Hart when she was unable to pay for crack supplied by appellants. It is urged by appellants that they are entitled to a new trial because Moore committed perjury at the trial.

At the evidentiary hearing held on appellants' motion for a new trial, Moore testified that the statements in her letters to Johnson were untrue and were made in order to further her efforts to maintain a romantic relationship with him. She testified that she was aware that Johnson was incarcerated in the same jail with four of the defendants and that she did not want her relationship with Johnson to be strained because she had "snitched" on the appellants. According to Moore, she had made up the story in her letters to make it appear that she was in some manner compelled to be a confidential informant in the course of implicating the appellants.

We review the district court's denial of appellants' motion for a new trial for abuse of discretion. United States v. Arrington, 757 F.2d

10

1484, 1486 (4th Cir. 1985); United States v. Nelson, 970 F.2d 439, 443 (8th Cir.), cert. denied, 506 U.S. 903 (1992). Applying the principles of those cases here, we conclude that the district court did not abuse its discretion in denying appellants' motion for a new trial. The district court credited the testimony of Moore at the hearing on the motion, determined that she had lied in her letters to Johnson and concluded that she had not committed perjury at the trial. In view of its finding as to Moore's credibility, the district court did not abuse its discretion in denying appellants' motion for a new trial.

V

Among the pretrial motions filed by appellants was a motion to suppress evidence recovered from the Nissan Pathfinder and from the person of Jacques Paul when the vehicle was stopped and its occupants arrested shortly after midnight on August 30, 1995. Appellants Dorlouis and Jacques Paul contend that the district court erred in declining to suppress the money found in the Pathfinder's console and the money and drugs found on the person of Jacques Paul. The district court held several hearings on appellants' motions to suppress evidence. In its Order of November 28, 1995, the Court concluded that probable cause existed for the arrest of the four male defendants in the Pathfinder and that the search of the defendants and the vehicle was in all respects reasonable as incident to the arrest of these four individuals. The motions to suppress were accordingly denied. We conclude on the record here that no error was committed by the district court in so ruling.

It has long been established that probable cause exists where the facts and circumstances are sufficient to warrant a person of reasonable caution to believe that a crime has been committed and that seizable property can be found at the place to be searched. Carroll v. United States, 267 U.S. 132, 162 (1925). Probable cause to arrest depends upon whether, at the moment the arrest was made, the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant or defendants had committed an offense. Adams v. Williams, 407 U.S. 143, 148 (1972) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Once suspects occupying an automobile have been arrested, officers are permitted,

11

as a contemporaneous incident to the arrest, to search their persons and also the passenger compartment of the automobile. New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Taylor, 857 F.2d 210, 214 (4th Cir. 1988).

Moore, the confidential informant, had been used by Officer Hart on several prior occasions. Information furnished by Moore and her activities on August 29, 1995, which had been the subject of surveillance and monitoring by the officers, clearly provided them with probable cause to conclude that appellants had committed the crime of conspiring to distribute crack cocaine, a felony under federal law. Two separate transactions were monitored. First, Moore met with Jacques Paul, Marc Charles and Sallie Schultz during the afternoon of August 29, 1995. At that time, she paid the $700 she owed and obtained more crack cocaine on credit.

Later, Moore was given $1,600 by the officers to carry out another transaction that same evening. At about 11:20 p.m. on August 29, 1995, four black males were observed in the Pathfinder at the housing project. Two of them left the vehicle, entered Moore's apartment and later returned to the Pathfinder. Immediately thereafter, Moore met with Officer Hart, identified the individuals with whom she had just met and delivered to Hart the crack cocaine she had bought from them. Moore was wearing body tapes during both the earlier and the later transaction. The tapes of those transactions were not sufficiently audible to be useful in determining what occurred. However, Officer Hart had listened on his police radio to conversations between Moore and the participants in the second transaction. Tapes of telephone calls made by Moore concerning the drug transactions were audible and intelligible. There was surveillance of both transactions by law enforcement officers.

After meeting with Moore some two minutes after the second transaction took place, Officer Hart alerted other officers and instructed them to follow the Pathfinder and arrest its occupants. The stop and arrest occurred only a short distance from the housing project where Moore had met with them and had received the one ounce of crack cocaine. Five or six police vehicles stopped the Pathfinder on the Patrick Street Bridge and approached the vehicle which was occupied by appellants Dorlouis, Charles, Jacques Paul, and Najac

12

Paul. All four occupants were ordered out and placed under arrest. The vehicle was then searched and $958 was found in the front seat console. A plastic bag containing 6.46 grams of crack cocaine was found in the front pocket of Jacques Paul.

We conclude that the arresting officers had ample probable cause to arrest all four of the occupants of the Pathfinder in the early morning hours of August 30, 1995. Once the arrest was made, the officers were entitled, as incident to such arrest, to search the console of the Pathfinder and to search the person of Jacques Paul. Taylor, 857 F.2d at 214. There is no merit to appellants' argument that West Virginia law is applicable and does not allow a warrantless arrest for a felony not committed in the presence of the officers. We rejected that very same contention in United States v. Sims, 450 F.2d 261, 262-63 (4th Cir. 1971).

Appellant Jacques Paul argues that the officers did not have "particularized probable cause" to arrest him when they found him in the Pathfinder. This contention ignores facts known by the officers indicating that Jacques Paul had previously participated in various acts in furtherance of the conspiracy. Based on the facts known to them, the officers had reasonably trustworthy information indicating that Jacques Paul was one of the four individuals in the vehicle which had earlier that evening been driven to Moore's apartment where a drug transaction occurred.

Relying on Illinois v. Lafayette, 462 U.S. 640, 645 (1983), Jacques Paul further argues that he was subjected to an unconstitutional strip search. We conclude under the circumstances here that Jacques Paul was not subjected to an unnecessarily intrusive search. The officers knew that Moore had earlier that evening given $1,600 in marked money to appellants. When all four of the occupants of the vehicle were searched and the money was not found, the decision was made to search the clothing of each of the four individuals. Jacques Paul was placed in the jump seat of a police van, his trousers were pulled down and the $1,600 in marked money fell out. His boxer shorts were not removed.

Under these circumstances, we conclude that the search in question was not an unconstitutional strip search. The search did not occur on

13

the street subject to public viewing but took place in the privacy of the police van. Since the police officers acted reasonably in attempting to locate the missing money, the contention by Jacques Paul that he was subjected to an unconstitutional strip search must fail.

VI

Jacques Paul further argues that there was insufficient evidence to support his conviction on Count Five. Similarly, appellant Schultz contends that the evidence presented at the trial was not sufficient to support her convictions on Counts One, Two and Three.

In our review of the record here, we must draw all reasonable inferences in the light most favorable to the government. Glasser v. United States, 315 U.S. 60 (1942). When assessing the sufficiency of the evidence of a criminal conviction on direct review,"the verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Id. at 80.

Following our review of the facts of record here, we conclude that the jury could rationally have found from the evidence that the prosecution had proved at the trial all of the essential elements of the crime charged against Jacques Paul in Count Five of the superseding indictment and also of the crimes charged against appellant Schultz in Counts One, Two and Three of the superseding indictment.

VII

Appellants' other claims of error are similarly without merit. Appellant Najac Paul asserts that the Sentencing Reform Act of 1984 and the Guidelines promulgated thereunder constitute a Bill of Attainder in violation of Article 1, Section 9 of the Constitution, since they permit an increase in punishment because of relevant conduct. Najac Paul also objects to the testimony of Rhonda Cunningham at the sentencing hearing, claiming that such testimony unfairly resulted in an increase in the punishment received by him because it constituted evidence of crimes for which he was neither charged nor convicted.

A Bill of Attainder is a legislative determination of guilt which metes out punishment to named individuals. United States v. Lovett,

14

328 U.S. 303, 315 (1946); United States v. Van Horn, 798 F.2d 1166, 1168 (8th Cir. 1986). The sentence of Najac Paul was governed by the Sentencing Reform Act of 1984, 18 U.S.C. § 3551, et seq., and the Guidelines promulgated by the Sentencing Commission. The Sentencing Reform Act and the Guidelines do not specifically single out any one individual for an increase in punishment. Rather, the Guidelines provide for increased punishment of convicted defendants who have been involved in relevant conduct as defined by U.S.S.G. § 1B1.3. Because the pertinent section provides for increased punishment of all defendants who have engaged in additional relevant conduct rather than of any specific defendant, it is not a Bill of Attainder. United States v. Bennett, 928 F.2d 1548, 1556 (11th Cir. 1991); Van Horn, 798 F.2d at 1168.

VIII

Appellant Schultz argues that the district court erred in denying her motion for a severance, in denying her motion for acquittal and in denying her motion for a mistrial. We have previously concluded that the evidence was sufficient to support the conviction of appellant Schultz on all counts. Severance is a matter committed to the sound discretion of the district court. United States v. Tedder, 801 F.2d 1437, 1450 (4th Cir. 1986), cert. denied, 480 U.S. 938 (1987). Similarly, denial of a defendant's motion for a mistrial is within the sound discretion of the district court and will be disturbed only under the most extraordinary of circumstances. United States v. Heyward, 729 F.2d 297, 301 n.2 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985); United States v. Smith, 44 F.3d 1259, 1268 (4th Cir.), cert. denied, 115 S.Ct. 1970 (1995).

Applying these principles, we conclude on the record here that the trial court did not abuse its discretion in denying Schultz's motion for a severance. The evidence indicated that appellant Schultz was a member of the conspiracy from its inception. She has not shown that the denial of her requested severance deprived her of a fair trial and resulted in a miscarriage of justice. United States v. Becker, 585 F.2d 703, 706 (4th Cir. 1978), cert. denied, 439 U.S. 1080 (1979). Nor do we conclude under the circumstances here that there was an abuse of discretion when Schultz's motion for a mistrial was denied.

15

IX

For all the reasons set forth herein, we affirm the convictions of appellants Dorlouis, Jacques Paul, Charles, Najac Paul and Schultz. We further affirm the sentence imposed on appellant Najac Paul.

AFFIRMED.

16