**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5101**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

RICO JARUIASE JOY,

        Defendant – Appellant.

**No. 07-5102**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

TERRELL KURT MYERS,

        Defendant – Appellant.

**No. 07-5104**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

JAMETRIUS LAQUAN JUDGE,

        Defendant – Appellant.

---

**No. 07-5105**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

ABDUL JAMAL BRYANT,

        Defendant – Appellant.

---

Appeals from the United States District Court for the District of South Carolina, at Florence. Terry L. Wooten, District Judge. (4:06-cr-01317-TLW-6; 4:06-cr-01317-TLW-4; 4:06-cr-01317-TLW-5; 4:06-cr-01317-TLW-3)

---

Argued: March 25, 2009        Decided: July 2, 2009

---

Before WILLIAMS, Chief Judge, WILKINSON, Circuit Judge, and David A. FABER, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** David Bruce Betts, Columbia, South Carolina, for Appellants. Rose Mary Sheppard Parham, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee. **ON BRIEF:** John Wesley Locklair, III, LOCKLAIR LAW FIRM, LLC, Surfside Beach, South Carolina, for Appellant Rico Jaruiase Joy; Kathy Price Elmore, ORR, ELMORE & ERVIN, LLC, Florence, South Carolina, for Appellant Jametrius Laquan Judge; Henry M. Anderson, Jr., Florence, South Carolina, for Appellant Abdul Jamal Bryant. W. Walter Wilkins, United States Attorney,

Columbia, South Carolina, Carrie A. Fisher, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following the denial of their motions to suppress, Rico Joy, Abdul Jamal Bryant, Terrell Kurt Myers, and Jametrius Laquan Judge (collectively "Appellants") entered conditional guilty pleas to being felons in possession of firearms and ammunition in violation of 18 U.S.C.A. § 922(g)(1) (West 2000). They now collectively appeal the district court's denial of those motions, arguing here, as below, that there was no probable cause to justify their arrest and, accordingly, that the search incident to their arrest was unconstitutional.[*]

I.

In 2006, the Horry County Police Department ("HCPD") began investigating the drug activities of Lawrence Davis. After confidential informants purchased drugs from Davis on two different occasions, the HCPD decided to set up a buy/bust, planning to arrest Davis after a confidential informant purchased the drugs. On November 29, 2006, the lead investigator for the case, Detective Jolliff, and another

---

[*] Appellants also argue that the search was unjustified under a Terry v. Ohio, 392 U.S. 1 (1968) analysis, which presents a less onerous standard for the Government to meet than that for probable cause. Because we affirm the district court's finding that there was probable cause to arrest Appellants, however, we do not address this argument.

4

investigator, Detective Mark Cooper, arrived at the home where the drug buy was supposed to occur. Jolliff and Cooper monitored the residence from a position behind its garage, and additional units set up a perimeter. The officers had expected Davis to arrive alone, but he arrived accompanied by two other vehicles containing the Appellants. Davis and his driver exited their vehicle, a red Chevy, and entered the house. The Appellants also exited their vehicles, a white Ford and a gray Kia, and spread out to stand at equidistant intervals in the home's driveway. They did not talk; the four Appellants simply stood in their positions for twenty minutes until Davis and his driver exited the home, at which point all four Appellants returned to their vehicles.

Detective Jolliff, who was monitoring the drug buy with a recording device, made the decision to "[t]ry to get all three cars." (J.A. at 340.) When the drug buy was complete, Jolliff told the other officers that "everybody is getting in all three vehicles." (J.A. at 341.) Jolliff was unsure which vehicle contained Davis, but the dispatcher told Jolliff that he needed to "[c]all it" because the dispatcher did not believe that Jolliff had enough evidence to prove a conspiracy among all of the individuals. (J.A. at 341-42.) Although he never specifically withdrew his order to stop the other two vehicles,

Jolliff ultimately instructed the officers that the dealer was in the red car.

Acting pursuant to that information, the officers initiated a "takedown" of all three vehicles when they stopped for a red light. During this takedown, officers approached the vehicles, ordered the occupants out, patted them down, arrested them, and searched the vehicles. The officers recovered one gram of crack cocaine, one stun gun, and a loaded 9mm pistol from Davis and his driver, who had occupied the red car. The officers likewise recovered a loaded NEF .32 caliber revolver from Bryant's waistband, and a loaded and chambered Glock 9mm pistol from Myers's waistband. The officers also seized a loaded and chambered Ruger .45 caliber pistol from Joy's waistband. No weapon was recovered from Judge's person, but a loaded Ruger .44 caliber pistol was found near the driver's seat where Judge had been seated. Bryant and Myers had occupied the white Ford, while Joy and Judge had been riding in the gray Kia.

On December 19, 2006, a federal grand jury in the District of South Carolina indicted Bryant, Myers, Joy, and Judge, as well as Davis and his driver, charging them with, inter alia, being felons in possession of firearms and ammunition in violation of 18 U.S.C.A. §§ 922(g)(1) and 924(e). The Appellants moved to suppress the firearms and ammunition found at the time of their arrest, arguing that the officers did not

6

possess the probable cause necessary to stop their vehicles, arrest them, and search their persons. After a hearing, the district court determined that probable cause existed to arrest the four Appellants and denied their motions to suppress. The district court later denied a motion to reconsider, prompting the four Appellants to file conditional guilty pleas, reserving the right to appeal the district court's denial of their motions to suppress. The Appellants were sentenced at a separate hearing on October 30, 2007, and all four timely appealed. We possess jurisdiction over their claims pursuant to 28 U.S.C.A. § 1291 (West 2006).

II.

In reviewing the denial of a motion to supress, we review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Blatstein, 482 F.3d 725, 730 (4th Cir. 2007). We view the evidence in the light most favorable to the prevailing party below. United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004).

A.

A warrantless arrest is constitutionally permissible if there is probable cause for the arresting officer to believe that a felony is being or has been committed by the arrested individual. See United States v. McCraw, 920 F.2d 224, 227 (4th

7

Cir. 1990). Probable cause to arrest exists if the facts and circumstances within the arresting officers' knowledge at the moment the arrest is made would be sufficient for a prudent man to believe that the defendants had committed an offense. United States v. Dorlouis, 107 F.3d 248, 255 (4th Cir. 1997). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation marks omitted). Even "seemingly innocent activity" can provide the basis for probable cause when considered in the context of the surrounding circumstances. Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996).

The district court found that Bryant, Myers, Joy, and Judge "were involved in setting up a perimeter" while Davis and his driver were inside conducting the drug transaction with the confidential informant. (J.A. at 241.) In reaching this conclusion, the district court pointed to undisputed evidence that the Appellants, though riding in separate vehicles, arrived together with Davis, a known drug dealer, and his driver. The Appellants walked to specific locations around the property where the drug transaction was taking place, did not speak to each other during their time outside of their vehicles, and returned to their vehicles and left when Davis and his driver exited the building. The district court concluded that setting

8

up a perimeter signaled involvement with the drug transaction taking place inside and gave the arresting officers probable cause to arrest the Appellants.

We agree. Detective Jolliff observed the Appellants arrive with a known drug dealer at the scene of an arranged buy/bust and take positions at equidistant invervals around the house without speaking to one another.  Detective Jolliff, an officer experienced in surveillance and buy/bust operations, testified that the Appellants' actions suggested that they were lookouts for the drug deal, and the district court relied on this testimony in making its determination.  The Appellants offer us no alternative explanation for their presence at the scene.

Of course, "a police officer may draw inferences based on his own experience in deciding whether probable cause exists. . . . [a]n appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable."  Ornelas v. United States, 517 U.S. 690, 700 (1996).  Thus, we agree with the district court and find that a reasonable officer, after witnessing their behavior at a known drug transaction, would believe that the Appellants were involved in the transaction and thus had committed an offense. See United States v. Rivera, 370 F.3d 730, 733 (8th Cir. 2004) (finding probable cause where suspect's "actions and behavior, although perhaps seemingly innocuous to the general public, were

9

reasonably suspicious to officers trained to recognize behaviors consistent with those of a lookout for a drug deal").

B.

In response to this relatively common-sense conclusion, the Appellants raise two arguments. First, the Appellants point out that the dispatcher in this case told the arresting officers that there was not enough evidence to convict the Appellants for conspiracy with the drug dealer. Thus, according to the Appellants, the arresting officers could not have believed that probable cause existed to stop and arrest them. Second, the Appellants claim that, even if Detective Jolliff was aware of facts that would establish probable cause, his knowledge cannot be imputed to the officers who actually effected the arrests of the Appellants. We find neither argument persuasive.

i.

With respect to the Appellants' argument that the dispatcher's ruminations somehow preclude a finding of probable cause, we note that whether one particular individual subjectively believes probable cause does or does not exist is irrelevant. "Because probable cause is an objective test, we examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether they

10

thought that the facts constituted probable cause." Gray, 137 F.3d at 769. Here, Appellants had just been observed in what the district court determined was the establishment and maintenance of a perimeter to safeguard a drug transaction. The Appellants arrived and left at the same time as the dealer. We believe that this knowledge of Appellants' participation in a known drug transaction "provide[s] a probability on which reasonable and prudent persons would act." Id. Thus, Appellants' contention that the dispatcher's personal beliefs preclude a finding of probable cause is without merit.

ii.

Likewise, the Appellants' argument that Detective Jolliff's knowledge of their activities cannot be imputed to the officers who actually initiated the arrests is similarly without merit. Under the collective knowledge doctrine, the collective knowledge of the police can be used in two different situations to establish probable cause even when the arresting officer himself does not have sufficient personal knowledge to independently establish probable cause. The first situation arises when one officer with personal knowledge of facts sufficient to establish probable cause orders another officer, who does not have personal knowledge of those facts, to make an arrest. In that situation, it is clear that "so long as the officer who orders an arrest . . . has knowledge of facts

11

establishing probable cause, it is not necessary for the officers actually making the arrest . . . to be personally aware of those facts." United States v. Laughman, 618 F.2d 1067, 1072-73 (4th Cir. 1980). In the second situation, an officer without independent knowledge of facts sufficient to establish probable cause makes an arrest, but the officer has been in communication with a group of officers that collectively has knowledge of facts sufficient to establish probable cause. "[W]hen a group of agents in close communication with one another determines that it is proper to arrest an individual, the knowledge of the group that made the decision may be considered in determining probable cause, not just the knowledge of the individual officer who physically effected the arrest." Laughman, 618 F.2d at 1072 n.3. (quoting United States v. Woods, 544 F.2d 242, 260 (6th Cir. 1976); see also United States v. Wells, 98 F.3d 808, 810 (4th Cir. 1996) ("[A]lthough the agent who actually seized the weapon pursuant to the supervising agent's instructions had no personal knowledge that [the defendant had committed a crime], it is sufficient that the agents collectively had probable cause to believe the weapon was evidence of a crime at the time of the seizure."). Both versions of the collective knowledge doctrine support finding probable cause in this case.

12

First, although Appellants claim that Jolliff only ordered the stop of one vehicle, the record clearly demonstrates that Jolliff initially ordered the officers to attempt to stop all three vehicles. After his command to "[t]ry to get all three cars," the dispatcher interfered and told Jolliff that he needed to pick a vehicle. (J.A. at 340.) At that point, Jolliff did not retract his previous command, but he clarified that the dealer was in the red car. Thus, because his initial order to try and stop all three cars was not withdrawn, Jolliff's knowledge may be imputed to the arresting officers.

Moreover, even if Jolliff did retract his initial order to "try to get all three cars," the arresting officers need not individually have personal knowledge of facts sufficient to establish probable cause. The record indicates that the arresting officers were in communication with Detective Jolliff over the course of the buy/bust: the officers heard Jolliff state that "all three cars [were] involved" in the drug transaction, and they had personally listened to a radio transmission that detailed Appellants' involvement in the drug transaction. (J.A. at 340.) And, of course, Detective Jolliff had witnessed Appellants engaged in the formation of a protective perimeter at the scene of a known drug transaction. Because the arresting officers were in close communication with

13

one another, we consider the collective knowledge of the group, which is sufficient to establish probable cause.

C.

Because the officers had probable cause to arrest the Appellants, we next consider the propriety of the searches that led to discovery of the firearms. Of course, "[o]nce suspects occupying an automobile have been arrested, officers are permitted, as a contemporaneous incident to the arrest, to search their persons." Dorlouis, 107 F.3d at 255. Because probable cause existed to arrest the Appellants, the officers were justified in searching the persons of Bryant, Myers, and Joy, and the firearms discovered during those searches were properly admitted into evidence by the district court.

The circumstances surrounding the discovery of Judge's firearm are slightly different, however, because that firearm was discovered in the driver's seat of the vehicle where Judge had been seated. Although a vehicle search incident to arrest is generally unjustified unless "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search . . . circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." Arizona v. Gant, 129 S. Ct. 1710, 1719 (2009) (internal quotation marks omitted). The

14

record is unclear as to whether Judge was secured or within reaching distance of his vehicle at the time of the firearm's discovery, but we find that it was reasonable for the officers to believe that evidence relevant to Judge's involvement in the drug transaction might have been found in the vehicle. As stated above, the officers knew that Judge had just been present on the scene of a known drug transaction. The Supreme Court has specifically acknowledged that drug offenses are the type of offense for which it may be reasonable to believe that evidence relating to the crime might be located in the vehicle. Id. Because the officers could have reasonably believed that evidence relating to Judge's involvement in the drug transaction might have been located in the passenger compartment of his vehicle, the district court properly admitted the firearm into evidence.

III.

"As its name suggests, probable cause involves probabilities -- judgment calls that are tethered to context and rooted in common sense." United States v. White, 549 F.3d 946, 947 (4th Cir. 2008). We find that, given the information available to the officers at the time of Appellants' arrest, the officers reasonably believed that Appellants had been involved

15

in a felony relating to the drug transaction.  For the foregoing reasons, the judgment of the district court is

AFFIRMED.