**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 09-4127**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

ADRIAN OLUYEMI WRIGHT,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Catherine C. Blake, District Judge. (1:08-cr-00386-CCB-2)

———————

Submitted:  March 22, 2010        Decided:  April 15, 2010

———————

Before SHEDD and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

James Wyda, Federal Public Defender, Baltimore, Maryland, Joanna Silver, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, James G. Warwick, Assistant United States Attorney, Brian Murray, Legal Intern, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Adrian Oluyemi Wright appeals his convictions for conspiracy to import one hundred grams or more of heroin, 21 U.S.C. §§ 960(a)(1) and 963, and conspiracy to distribute and to possess with intent to distribute one hundred grams or more of heroin, id. §§ 841(a)(1) and 846. Finding no error, we affirm.

I

In late July 2008, DEA Agent Lawrence Baumeister learned that police officers in New Delhi, India had intercepted a DHL package containing approximately 400 grams of heroin destined for Baltimore, Maryland. Castor George was listed as the addressee on the package, with an address of 621 Cator Avenue, Baltimore, Maryland (the Townhouse).

In coordination with the Indian authorities, DEA agents in India took the package to the airport in New Delhi and placed it on a plane bound for Newark, New Jersey. The package arrived in Newark on July 29 and was transported to Baltimore by Agent Baumeister.

On July 30, 2008, DEA Agent Alfred Cooke set up surveillance near the Townhouse in preparation for a planned controlled delivery of the package. During this surveillance, Agent Cooke observed a 2001 BMW arriving at the Townhouse. The sole occupant of the vehicle entered the Townhouse and, a short

time later, exited it, carrying a black bag and wearing a latex glove on one hand. A license plate check was run around this time, and the check revealed that the vehicle was registered to Wright. Later that day, Agent Cooke reviewed Wright's Department of Motor Vehicle (DMV) photograph and indentified him as the individual he saw entering and exiting the Townhouse.

A short time later, several more DEA agents, including Agent Baumeister, joined Agent Cooke near the Townhouse in order to assist monitoring the controlled delivery. Once the entire surveillance team was in place, a controlled delivery of the package was attempted by a DEA agent posing as a DHL employee. Upon arriving at the door, the agent noticed a handwritten note taped to the door, instructing the delivery person to leave the package at the door. Instead, the agent left his own handwritten note, instructing Castor George to contact DHL at a particular number to arrange a delivery time. The phone number provided actually was the phone number of a DEA agent, Agent Robert Hladun.

On the morning of July 31, 2008, Wright, identifying himself as Castor George, left two messages on Agent Hladun's voicemail, instructing DHL to leave the package inside the unlocked front door of the Townhouse. Eventually, Wright spoke with Agent Hladun several times that morning. In the last conversation, Agent Hladun was informed that Castor George's

neighbor, "Javier," was going to be able to receive the package. (J.A. 42).

That afternoon, Agent Jeffrey Hostelley set up surveillance at the Townhouse. During the surveillance, he observed both Wright and Jonathan Grullon down the street from the Townhouse. Wright repeatedly approached Agent Hostelley's surveillance van, which was about 150 feet from the Townhouse, circling it approximately four times and looking closely at the interior of the van. On one occasion, Wright made hand gestures in an attempt to determine if anyone was inside.

Approximately an hour after Agent Hostelley set up surveillance, additional DEA agents arrived to assist. Although Agents Cooke and Baumeister were not at the scene, Agent Brendan O'Meara, who was present, was aware that Agent Cooke had indentified Wright as the person who entered and exited the Townhouse on July 30. At this point in time, all the agents, save the agent responsible for delivering the package, were in constant radio communication with one another.

An undercover DEA agent posing as a DHL employee went to the Townhouse to attempt delivery. After no one answered the door, he returned to the delivery truck. Grullon then ran up the street to meet the agent near the truck. Grullon identified himself as Javier, signed for the package, and accepted delivery. Grullon carried the parcel to the Townhouse and

entered it with the use of a key. He left the Townhouse shortly thereafter without the parcel. Grullon walked down the street and met up with Wright. After a brief conversation, they entered a red sport utility vehicle (SUV).

While Wright and Grullon were conversing, the DEA agents were discussing whether to effectuate a stop. The agents decided to effectuate a stop and this was done by Agent Thomas Martin, after he pulled his vehicle, in which Agent O'Meara was a passenger, in front of the parked red SUV.

Grullon was in the driver's seat and Wright was seated in the front passenger seat as Agent O'Meara and other agents approached the SUV. Agent O'Meara asked Grullon what he was doing in the area. Grullon stated that he was just driving through the neighborhood and had stopped at the convenience store located across the street to purchase a drink, which was inconsistent with the agents' observations of Grullon's activities. When asked if he had been anywhere else in the area, Grullon stated that he had only gone to the store and no other place. Both Grullon and Wright were then arrested and handcuffed.

Incident to their arrests, both men were searched. A set of keys and $860 were recovered from Wright. One of those keys fit the door to the Townhouse. A cellular phone was found on Grullon. Another cellular phone was near the console of the

vehicle and two more were on the floor of the front passenger compartment where Wright had been seated. One of these cell phones was used to call Agent Hladun.

On August 13, 2008, a grand jury sitting in the District of Maryland indicted Wright and Grullon, charging them with conspiracy to import one hundred grams or more of heroin, 21 U.S.C. §§ 960(a)(1) and 963, and conspiracy to distribute and to possess with intent to distribute one hundred grams or more of heroin, id. §§ 841(a)(1) and 846. On September 5, 2008, Wright moved to suppress certain physical evidence and statements. The district court granted suppression of the statements but denied suppression of the physical evidence after an evidentiary hearing which concluded on October 16, 2008.

Before the start of Wright's jury trial, Grullon pleaded guilty to the charge of conspiracy to import heroin. Following his trial, Wright was convicted of both charges. On January 23, 2009, he was sentenced to concurrent terms of 92 months' imprisonment on each count. He noted a timely appeal.

II

A

We review the district court's factual findings underlying the denial of a motion to suppress for clear error, and its legal determinations de novo. United States v. Perry, 560 F.3d

246, 251 (4th Cir.), cert. denied, 130 S. Ct. 177 (2009). When a suppression motion has been denied, we view the evidence in the light most favorable to the government. United States v. Neely, 564 F.3d 346, 349 (4th Cir. 2009).

A warrantless arrest is constitutionally permissible if there is probable cause for the arresting officers to believe that a felony is being or has been committed by the arrested individual. United States v. McCraw, 920 F.2d 224, 227 (4th Cir. 1990). Probable cause to arrest exists if the facts and circumstances within the arresting officers' knowledge at the moment the arrest is made would be sufficient for a prudent man to believe that the defendant had committed an offense. United States v. Dorlouis, 107 F.3d 248, 255 (4th Cir. 1997). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation marks omitted). Even "[s]eemingly innocent activity" can provide the basis for probable cause when considered in the context of the surrounding circumstances. Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996).

Moreover, probable cause can rest on the collective knowledge of the officers involved in an operation rather than solely on that of the officer who makes the arrest. United States v. Pitt, 382 F.2d 322, 324 (4th Cir. 1967). Under the

collective knowledge doctrine, law enforcement officers cooperating in an investigation are entitled to rely upon each other's knowledge of facts when forming the conclusion that a suspect has committed or is committing a crime. See United States v. Wells, 98 F.3d 808, 810 (4th Cir. 1996) ("And, although the agent who actually seized the weapon pursuant to the supervising agent's instructions had no personal knowledge that Wells was a convicted felon, it is sufficient that the agents collectively had probable cause to believe the weapon was evidence of a crime at the time of the seizure.").

The district court concluded that the DEA agents had probable cause to arrest Wright on July 31, 2008, based on the collective knowledge known to the agents. In so concluding, the district court stated:

> I think what happens at that point, again, with the collective knowledge of law enforcement, and Mr. Wright's previous entry into 621 Cator, Mr. Grullon's entry with the actual package, the circumstance of those phone calls having been made, and it's obviously not a coincidence that somebody named Javier in fact is the one that shows up and signs for that package, I think that at the time the car is stopped, . . . there is indeed probable cause.

(J.A. 193).

Wright's main challenge to the district court's decision concerns what information was within the collective knowledge of the DEA agents. None of the agents present near the Townhouse on July 31 had ever seen a photo of Wright prior to that date.

- 8 -

Given this fact, Wright posits that the district court could not rely on Wright's entry into the Townhouse on July 30 in its probable cause determination, and without the link between his presence on July 30 and July 31, there simply was no probable cause to arrest.*

We need not decide whether the evidence positively indentifying Wright as present at the Townhouse on July 30 properly can be considered as part of the pool of collective knowledge justifying his arrest on July 31 because, even without the information indentifying Wright, the information within the collective knowledge of the DEA agents on July 31 unquestionably justified the arrest.

The DEA agents at the scene on July 31 knew that a DHL package with a substantial amount of heroin was mailed in India, with the intended destination being the Townhouse. The agents also knew that the previous delivery attempt failed, and that an individual was seen entering the Townhouse on July 30 and exiting a short time later wearing a latex glove. The agents also knew, based on the phone messages and conversations, that

_____

* Wright also posits that Agent Hostelley's observations concerning his counter-surveillance activities on July 31 were not communicated to the other DEA agents. However, this position is in direct contravention to the testimony of Agent O'Meara, which we are bound to accept under the standard of review governing here.

Castor George was not keen on being present when the package arrived for delivery.

At the time of the delivery on July 31, Wright was in the vicinity of the Townhouse, and engaged in highly suspicious activity. He circled Agent Hostelley's surveillance van in an attempt to determine if it was empty, and he waited down the block from the Townhouse so that he could monitor the delivery. Immediately after he took delivery of the package, Grullon met up with Wright and had a short discussion with him before they both entered the red SUV. Grullon's deceptive responses to Agent O'Meara's questions further supports the agents' conclusion that probable cause to arrest both individuals was present. In short, we harbor no doubt that, at the moment of Wright's arrest, a prudent man would believe that Wright was involved in a heroin importation conspiracy. Dorlouis, 107 F.3d at 255.

B

In his reply brief, Wright argues that the search of the red SUV contravenes the Supreme Court's decision in Arizona v. Gant, 129 S. Ct. 1710 (2009). In Gant, the Court held that a search of a vehicle's passenger compartment incident to the arrest of a recent occupant is lawful only "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or "when it is reasonable

- 10 -

to believe evidence relevant to the crime of arrest might be found in the vehicle." Id. at 1719. (internal quotation marks omitted).

Our prudential doctrines require that a claim be raised in a party's opening brief. Failure to do so waives consideration of the claim. See Yousefi v. INS, 260 F.3d 318, 326 (4th Cir. 2001) (declining to consider claim raised for the first time in reply brief); Hunt v. Nuth, 57 F.3d 1327, 1338 (4th Cir. 1995) (same); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (holding that failure to raise a specific issue in the opening brief constitutes abandonment of the issue under Fed. R. App. P. 28(a)(9)(A), requiring that the argument section of the opening brief contain contentions, reasoning, and authority); see also United States v. Jones, 308 F.3d 425, 427 n.1 (4th Cir. 2002) (finding Apprendi v. New Jersey, 530 U.S. 466 (2000) argument raised for the first time in a Fed. R. App. P. 28(j) filing was waived). We therefore find that Wright has waived review of his Gant argument.

In any event, even if Wright's Gant argument were properly before us, we would reject it, as it was reasonable for the DEA agents to believe that evidence relevant to Wright's involvement in a heroin conspiracy might be found in the red SUV. Because the agents could have reasonably believed that evidence relating to Wight's involvement in a heroin conspiracy might be located

- 11 -

in the passenger compartment of the vehicle, Wright's <u>Gant</u> argument fails on the merits. <u>Gant</u>, 129 S. Ct. at 1719 (noting that drug offenses are the type of offense for which it may be reasonable to believe that evidence relating to the crime might be located in the vehicle).

III

For the reasons stated herein, the judgment of the district court is affirmed.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.

<u>AFFIRMED</u>